The injury occurred on October 6, 1923. The amended relief Section 1465-75, General Code, evidently extends relief to those employes of employers who were such on or "at any timeafter January 1, 1923." Said amended act provides that, after certain findings are made by the commission under that act, if the Attorney General certifies "that the amount found by the commission *Page 48 
cannot be collected in whole, compensation for injuries, diseases or deaths suffered during the period covered by such finding shall be paid from the surplus created by Section 1465-54, and any sum then or thereafter recovered on account of such finding shall be paid to the commission and credited to such fund as the commission shall determine."
Reargument was asked by this court upon one question only: Whether compensation, under the provisions of the amended act of 1925, may be paid out of said surplus fund, to employes injured prior to its passage, where the employer is insolvent and has not contributed either to the creation of the fund or the surplus. Four members of this court, to-wit, Judges Marshall, Day, Robinson and Kinkade hold that compensation cannot be paid out of the surplus fund, as stipulated in the act, and that in that respect Section 1465-75, General Code, as amended, is unconstitutional and violative of the due process clause found in Articles V and XIV of the Amendments to the federal Constitution. Three members of the court, to-wit, Judges Allen, Jones and Matthias, are of opinion that the act is valid under the general provisions of Section 35, Article II, of the state Constitution, and that the amended act is clearly an extension of the state's police power in safeguarding the lives of employes against the hazards of industry; that the due process clause does not restrict the state's right to impose reasonable obligations requiring solvent employers to contribute to the compensation of employes of insolvent employers whose premiums are unpaid and uncollectible by the Attorney General. If it be conceded that the fund *Page 49 
derived from the operation of the Workmen's Compensation Act is property belonging to the contributing employers, some of which is taken to pay compensation to injured workmen of other insolvent employers, so far as the record before us discloses the amount that may be taken from the whole body of contributing employers may be comparatively insignificant.
"It is established by a series of cases that an ulterior public advantage may justify a comparatively insignificant taking of private property for what, in its immediate purpose, is a private use." Noble State Bank v. Haskell, 219 U.S. 104,110, 31 S.Ct., 186, 187 (55 L.Ed., 112, 32 L.R.A. [N. S.], 1062, Ann. Cas., 1912A, 487).
In such cases there would be no unwarranted and unreasonable exercise of the state's police power in that feature of our workmen's compensation laws. If undue burdens are hereafter imposed, and legislative powers are found to be arbitrarily and unreasonably exercised in their imposition, we will consider such a situation when it arises.
In the case of Mountain Timber Co. v. Washington,243 U.S. 219, 245, 37 S.Ct., 260, 267 (61 L.Ed., 685, Ann. Cas., 1917D, 642), wherein the constitutional validity of the Workmen's Compensation Law of Washington was before the federal court, Mr. Justice Pitney said:
"In Noble State Bank v. Haskell, 219 U.S. 104
[31 S.Ct., 186, 55 L.Ed., 112, 32 L.R.A. (N.S.), 1062, Ann. Cas., 1912A, 487], this court sustained an Oklahoma statute which levied upon every bank existing under the laws of the state an assessment of a percentage of the bank's average deposits, for *Page 50 
the purpose of creating a guaranty fund to make good the losses of depositors in insolvent banks."
The Haskell case was cited in support of the validity of the Ohio Compensation Law in State, ex rel. Yaple, v. Creamer,Treas., 85 Ohio St. 349, 97 N.E. 602, 39 L.R.A. (N.S.), 694, and in Fassig v. State, ex rel. Turner, Atty. Gen.,95 Ohio St. 250, 116 N.E. 104.
Under the. Workmen's Compensation Law enacted pursuant to our state Constitution, the burdens are placed upon the hazards of industry rather than upon the individual. Whether the burden may be considered as having been imposed under the exercise of the police power, or as a measure of taxation upon business occupations, the principles announced in Timber Co. v.Washington, supra, apply. In the course of his opinion in that case Mr. Justice Pitney, quoting from a former case, said, at page 238 (37 S.Ct., 265):
"Neither the (Fourteenth) Amendment — broad and comprehensive as it is — nor any other amendment, was designed to interfere with the power of the state, sometimes termed its police power, to prescribe regulations to promote the health, peace, morals, education, and good order of the people, and to legislate so as to increase the industries of the state, develop its resources, and add to its wealth and prosperity."
And on page 243 (37 S.Ct., 267) alluding to the due process and equal protection clauses of the Fourteenth Amendment, as affecting Workmen's Compensation Laws, he said:
"And if, as we have held in New York Central R. R. Co. v.White [243 U.S. 188, 37 S.Ct., 247, *Page 51 61 L.Ed., 667, L.R.A., 1917D, 1, Ann. Cas., 1917D, 629], the state is at liberty, notwithstanding the Fourteenth Amendment, to disregard questions of fault in arranging a system of compensation for such injuries, we are unable to discern any ground in natural justice or fundamental right that prevents the state from imposing the entire burden upon the industries that occasion the losses. The act in effect puts these hazardous occupations in the category of dangerous agencies, and requires that the losses shall be reckoned as a part of the cost of the industry, just like the pay roll, the repair account, or any other item of cost."
If the argument that only those who contribute to and create the fund and surplus may participate in its benefits be tenable, then the entire structure of our Workmen's Compensation Act would be endangered, since the paid premiums which create the fund and surplus must necessarily be applied to losses occurring prior and subsequent to such contribution. After the premiums are paid into the fund by the employer under the act, the fund becomes the property of the state, and is held in trust for the payment of compensation to such injured employes as the state may designate.
In the companion case (State, ex rel. Rudd, v. IndustrialCommission, post, 67, 156 N.E. 107), the Attorney General in his brief seems to concede that our workmen's compensation scheme would be endangered; that denial of payment of compensation to employes of insolvent employers "would defeat our entire system of compensation." Under our system of fixing premiums for employers, the premiums are based upon an estimated pay *Page 52 
roll for the ensuing six months, and are paid on the basis of the estimated pay roll. However, at the end of the six months period it may be that the actual pay roll is three times larger than the estimated pay roll, and that three times the amount of premium paid is then due. In the meantime the employer has become bankrupt. Now in such case the Attorney General admits that the meanwhile insolvency of the bankrupt employer "will not prevent the employes from receiving the compensation provided by statute." In so far as the due process clause is concerned, it is difficult to distinguish between a case where no premium is paid and one where a partial premium is paid by employers who become insolvent.
Under our workmen's compensation system, injuries sustained by an employe of an employer, beginning operation in 1927, are compensable from a fund created before the employer started operations; that is to say, if A becomes an employer on January 2, 1927, and on March 2, 1927, his workman is killed in the course of his employment, the employe's dependents are compensated out of a fund substantially resulting from premiums paid by old employers prior to 1927. And, if the commission has been derelict in the collection of premiums from A, a duty enjoined upon it by Section 1465-75, General Code, and A meanwhile becomes insolvent, A's employes are not and should not be chargeable with such dereliction. Industrial Commission
v. Madden, 115 Ohio St. 230, 152 N.E. 662.
The pole star of our constitutional provisions relating to workmen's compensation is the welfare of its workmen. Section 35, Article II, of our organic *Page 53 
law, in the opening sentence, provides that laws may be passed "for the purpose of providing compensation to workmen and their dependents, for death, [and] injuries * * * occasioned in the course of such workmen's employment." By this section a "state fund" is authorized; the fund is to be "administered by the state, determining the terms and conditions upon which payments may be made therefrom." The state has determined the terms and conditions. Section 1465-75, General Code, has provided that if the state is unable to recoup its fund by collection from insolvent employers compensation "shall be paid from the surplus created by Section 1465-54."
If an employer becomes insolvent and does not pay his premium into the insurance fund, this does not deprive his employe or his dependents of the right to compensation. We so held inIndustrial Commission v. Madden, 115 Ohio St. 230,152 N.E. 662. In that case the Callahan Company had neither furnished its pay roll nor paid premiums for coverage of its employes at the time of Madden's injury and death; the company claiming that it had abandoned its operations before he was killed. Madden's dependents filed their application for compensation. It developed that, notwithstanding its failure to contribute to the fund, the company continued its operations up to the time that Madden was killed. In the meanwhile the company became insolvent. The dependents' application for compensation was finally refused by the commission, for the reason that it thought the law did not warrant compensation from the state insurance fund to "the dependents of a killed employe of an *Page 54 
employer who had not paid premium into the state insurance fund so as to have had coverage under the Workmen's Compensation Law prior to and at the time of the injury or death." Here was an insolvent employer who had not paid his premium nor obtained coverage at the time of the injury. It attempted to obtain coverage by paying the premium after the injury. That the employe's dependents under such circumstances were not deprived of their right to compensation was held by this court in above case. In a per curiam opinion, concurred in by every member of this court save one, considering Section 1465-75, General Code, we then said:
"Under the provisions of that section it is the duty of the Industrial Commission to require payment of premiums or the furnishing of bond covering the same. Such delinquencies do not deprive an employe injured during such period of the benefit of the act."
Whether such premium was paid voluntarily, or collected by suit, would not affect the right of the employe to recover compensation. The employe has no authority to bring suit for the collection of premiums; the state has. Section 1465-60, General Code, provides that every employer, employing three or more workmen, is subject to the provisions of the act. If the employer has failed to furnish his pay roll and has failed to pay the premium, the state is authorized to collect the premium in an action brought against the employer "in the name of the state" (Section 1465-75, General Code), and the judgment obtained therein is given the same preference as a judgment rendered for taxes. So *Page 55 
it can readily be seen why this court held that the delinquency of an insolvent employer in failing to furnish his pay roll and pay his premiums under the act did not deprive an employe of the benefit of the act during such period of delinquency.
Finally, as a controlling reason why the claim of the employer, that its property is taken without due process, cannot be sustained, is the concession that the state insurance fund does not belong to the employer. Such being the fact, dueprocess is not available to the employer, for his property is not taken. The employer, having paid his premium to the state, has acquired not only insurance, but has also obtained immunity from suit — has obtained his quid pro quo — meanwhile the fund is held in trust by the state, solely for the benefit of injured workmen and their dependents.
We do not consider that any question of loan is involved; therefore we do not discuss it. This case and State, ex rel.Rudd, v. Industrial Commission, supra, were submitted and heard together, and additional reasons for support of the view herein taken may be found in the opinion in the Rudd case.
The demurrer might well be overruled for another reason, though not one decisive of the merits of the legal controversy. No contributing employer is now complaining, nor is any made a party to this action. The state moots the due process claim in such employer's behalf. There is here no taking of the state's property or fund in invitum, for the state has voluntarily yielded its fund or surplus, by appropriate legislation, for the payment of these claims for compensation. *Page 56 
"It is the well-settled rule of this court that it only hears objections to the constitutionality of laws from those who are themselves affected by its alleged unconstitutionality in the feature complained of." Jeffrey Mfg. Co. v. Blagg,235 U.S. 571, 576, 35 S.Ct., 167, 169 (59 L. Ed., 364).
This court has always adhered to that rule.
Unlike some jurisdictions, we are not empowered to give advisory opinions as to the constitutional validity of laws if future eventualities should occur. Furthermore, the petition does not disclose that the taking of the employers' contributions, if it be a taking, may not be "comparatively insignificant" and justified by an "ulterior public advantage."Noble State Bank v. Haskell, supra.
Since the vote of six judges is required by the Ohio Constitution before a law can be declared unconstitutional and void in a case originating in this court, and as there are but four judges holding the statutory clause under consideration void, it follows that the constitutional validity of the statute is sustained, and the demurrer should be overruled and the peremptory writ allowed.
Writ allowed.
ALLEN and MATTHIAS, JJ., concur.