**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Martens v. Findlay Mun. Court*, Slip Opinion No. 2024-Ohio-5667.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-5667

THE STATE EX REL. MARTENS, APPELLANT, *v.* FINDLAY MUNICIPAL COURT ET AL., APPELLEES.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Martens v. Findlay Mun. Court*, Slip Opinion No. 2024-Ohio-5667.]

*Mandamus—Standing—Public-rights doctrine—State ex rel. Ohio Academy of Trial Lawyers v. Sheward overruled—Neither appellant nor future litigants may rely on* Sheward*'s public-right doctrine to bypass the traditional requirement that a litigant allege that he has been personally injured before he may seek relief in court—Appellant failed to establish taxpayer standing—Court of appeals' dismissal of complaint for lack of standing affirmed.*

(No. 2024-0122—Submitted September 3, 2024—Decided December 5, 2024.)

APPEAL from the Court of Appeals for Hancock County, No. 5-23-12.

_____

DEWINE, J., authored the opinion of the court, which KENNEDY, C.J., and

FISCHER and DETERS, JJ., joined.  BRUNNER, J., concurred in judgment only, with an opinion joined by DONNELLY and STEWART, JJ.

**DEWINE, J.**

{¶ 1} George Martens filed a complaint in the Third District Court of Appeals for a writ of mandamus against various judges and courts in Hancock County, alleging that they lacked jurisdiction to decide certain tax cases.  The Third District dismissed the case, concluding, among other things, that Martens lacked standing.  Now Martens appeals to this court.

{¶ 2} A longstanding principle requires a litigant to establish standing—that is, that he has been personally injured—before he may seek relief in court.  Martens has not alleged a personal injury.  Instead, he relies on something called the public-right doctrine, which this court recognized in *State ex rel. Ohio Academy of Trial Lawyers v. Sheward*, 1999-Ohio-123, ¶ 132, 33, to claim that he does not have to meet the traditional standing requirement.  Alternatively, he argues that he has standing as a taxpayer to bring this case.

{¶ 3} We reject Martens's attempt to rely on *Sheward* to bypass the standing requirement.  *Sheward* is an aberration in our caselaw.  It was contrary to our deeply rooted standing requirement and the Ohio Constitution.  It was wrong when it was decided and remains wrong today.  Tellingly, this court has not allowed a litigant to rely on *Sheward* in over 20 years.  Today, we expressly overrule *Sheward* and decline to allow Martens to rely on its exception to the standing requirement.

{¶ 4} Nor can Martens establish taxpayer standing.  Because Martens lacked standing to bring his complaint, we affirm the judgment of the court of appeals.

## I.  BACKGROUND

{¶ 5} Martens owns rental property in and pays taxes to the City of Findlay. He brought this mandamus action in the Third District against the Findlay

Municipal Court, the Hancock County Court of Common Pleas, and the judges of those courts because he believes that they are improperly exercising jurisdiction over cases in which the government seeks to recover unpaid municipal income taxes. But Martens has not alleged that he was a party to any tax case pending before those courts when he filed this action.

{¶ 6} The judges and the courts filed a motion to dismiss, arguing that Martens lacked standing to bring the complaint and that he had not stated a cognizable mandamus claim. The Third District granted the motion on both grounds and dismissed the case.

{¶ 7} Martens has appealed to this court as of right.

## II. ANALYSIS

{¶ 8} We note at the outset that Martens has requested oral argument. This case—a direct appeal from the court of appeals—does not fall into the category of cases in which this court regularly grants oral argument. *See* S.Ct.Prac.R. 17.01. We may, however, grant oral argument in direct appeals such as this one at the request of a party. *See* S.Ct.Prac.R. 17.02. But, because oral argument would not be helpful in this matter, we decline to do so.

{¶ 9} In the proceeding below, the court of appeals dismissed this action because it determined that Martens lacked standing to assert his claims and because he had failed to state a claim for mandamus relief. Because standing is a jurisdictional requirement, we address that issue first. And because the standing issue proves dispositive of this matter, we address only that issue.

*A. Standing is a deeply rooted constitutional requirement that we cannot ignore*

{¶ 10} The Ohio Constitution gives us limited power. It vests this court and inferior courts with only the "judicial power." Ohio Const., art. IV, § 1. The judicial power is the power to decide specific cases between conflicting parties. *Stanton v. State Tax Comm.*, 114 Ohio St. 658, 671-672 (1926). That means that we can only "decide actual controversies between parties legitimately affected by

specific facts." *Fortner v. Thomas*, 22 Ohio St.2d 13, 14 (1970). We cannot "declare principles or rules of law which cannot affect the matter at issue in the case before [us]." *Travis v. Pub. Util. Comm.*, 123 Ohio St. 355, 359 (1931). Rather, the Ohio Constitution limits our jurisdiction to cases where the parties have standing. *See State ex rel. Dallman v. Franklin Cty. Court of Common Pleas*, 35 Ohio St.2d 176, 179 (1973).

{¶ 11} The standing requirement is deeply rooted in our caselaw. As we explained in a case decided soon after the adoption of the 1851 Ohio Constitution,

> [t]he general and abstract question, whether an act of the legislature be unconstitutional, can not with propriety be presented to a court. The question must be, whether the act furnishes the rule to govern the particular case. What, then, is the effect and operation of the act upon the particular case? and does such effect and operation conflict with any provision of the constitution?

*Foster v. Wood Cty. Commrs.*, 9 Ohio St. 540, 543 (1858); *see also State ex rel. Williams v. Indus. Comm.*, 116 Ohio St. 45, 56 (1927) (lead opinion), quoting *Jeffrey Mfg. Co. v. Blagg*, 235 U.S. 571, 576 (1915) ("'It is the well-settled rule of this court that it only hears objections to the constitutionality of laws from those who are themselves affected . . . .' This court has always adhered to that rule.").

{¶ 12} To have standing, a plaintiff must show an actual injury fairly traceable to the defendant's conduct and that it is likely that a court can redress the injury. *ProgressOhio.org, Inc. v. JobsOhio*, 2014-Ohio-2382, ¶ 7. In mandamus, that means that the relator must show that he "'would be directly benefitted or injured by a judgment in the case.'" *State ex rel. Hills & Dales v. Plain Local School Dist. Bd. of Edn.*, 2019-Ohio-5160, ¶ 9, quoting *State ex rel. Sinay v. Sodders*, 1997-Ohio-344, ¶ 9. And the injury must be personal—that is, the plaintiff

or relator must suffer particular harm that is different from some general harm suffered by the public at large.[1]  *See ProgressOhio.org* at ¶ 7; *State ex rel. Masterson v. Ohio State Racing Comm.*, 162 Ohio St. 366, 368 (1954).  Martens, of course, argues nothing of the sort.

*B.  The* Sheward *public-right doctrine departs from our well-established standing requirement*

{¶ 13} In arguing that he does not need to meet the traditional standing requirement, Martens relies on our decision in *Sheward* and insists that he is entitled to "public right" standing.  In *Sheward*, this court abruptly departed from our long history of "always adher[ing]" to the standing requirement, *Williams* at 56.  *Sheward* involved a challenge to tort-reform legislation enacted by the General Assembly.  *Sheward* at ¶ 10, fn. 6.  Rather than challenge the application of the law in the context of a particular case, a trade association of trial attorneys filed an original writ action in this court against six Ohio common-pleas-court judges "'in their official capacity and representing those similarly situated.' "  *Id.* at ¶ 1, quoting the complaint.  The trial attorneys asked this court to issue writs of mandamus and prohibition (1) prohibiting the judges from following the new law and (2) declaring the law unconstitutional.  *Id.* at ¶ 4.

{¶ 14} Although the *Sheward* court acknowledged the traditional standing requirement, it created an exception "when the issues sought to be litigated are of great importance and interest to the public."  *Id.* at ¶ 33.  Thus, it held that "where

---

1. Our election-mandamus cases represent the outer bounds of the standing requirement.  We have long held in mandamus cases regarding election matters that an elector is a proper relator because he is beneficially interested in the case.  *State v. Brown*, 38 Ohio St. 344, 346-347 (1882); *State ex rel. Gregg v. Tanzey*, 49 Ohio St. 656, 662 (1892).  The elector's beneficial interest arises from the particular injury to his vote that would occur if election officials disregarded their election duties.  *See, e.g.*, *Brown* at 346-347 (holding that the elector-relator was interested in compelling officials to hold elections for the proper number of judges—and *beneficially* interested because "as an elector, he would be entitled to vote at the election, if an election were proper, and would be himself eligible to the office").  Because of this unique injury to their vote, electors satisfy the standing requirement in these cases.

the object of an action in mandamus and/or prohibition is to procure the enforcement or protection of a public right, the relator need not show any legal or special individual interest in the result, it being sufficient that relator is an Ohio citizen and, as such, interested in the execution of the laws of this state." *Id.* at ¶ 47. The court then proceeded to hold that the law was unconstitutional and granted writs precluding its application.

{¶ 15} Writing for three dissenting justices, Chief Justice Thomas Moyer explained that the majority's new public-right doctrine stood contrary to principles that "ha[d] governed the proper exercise of [the court's] original jurisdiction since Ohio became a state." *Id.* at ¶ 183 (Moyer, C.J., dissenting). He pointed out that the Ohio Constitution did not confer this court with original jurisdiction to issue declaratory judgments and that the effect of the court's order in *Sheward* was to grant a declaratory judgment that the tort-reform legislation was unconstitutional. *Id.* at ¶ 180. Chief Justice Moyer also noted that under the court's traditional writ standards, the relators were not entitled to relief because an adequate remedy at law existed to determine the constitutionality of the legislation by way of review in the trial courts and subsequent appeal. *Id.* at ¶ 211. Finally, he explained that the majority's holding was contrary to the principle of legal standing under which "courts decide only cases or controversies between litigants whose interests are adverse to each other, and do not issue advisory opinions." *Id.* at ¶ 213.

{¶ 16} Chief Justice Moyer was not alone in criticizing *Sheward.* One commentator described it as an "example[] of abusive judicial power" and said that its "controversial recognition of original jurisdiction . . . present[ed] daunting obstacles to the preservation of the separation of powers." Loeb, *Abuse of Power: Certain State Courts Are Disregarding Standing and Original Jurisdiction Principles So They Can Declare Tort Reform Unconstitutional*, 84 Marq.L.Rev. 491, 514 (2000). Another complained that "Ohio's highest court egregiously ignored well-established jurisdictional rules laid down by the court itself, decades

of procedural formalities, and a stream of consistent case law dating back to colonial America." Blake, Note, State ex rel. Ohio Academy of Trial Lawyers v. Sheward*: The Extraordinary Application of Extraordinary Writs and Other Issues; The Case that Never Should Have Been*, 29 Cap.U.L.Rev. 433, 434 (2001). Yet another commentator concluded that "[t]he *Sheward* court overreached its constitutional bounds," in violation of separation-of-powers principles. Elia, *Ohio's Standing Requirements and the Unworkable Public-Rights Exception*, 86 U.Cin.L.Rev. 1019, 1043 (2018). And an article in the *Harvard Law Review* bemoaned that "the *Sheward* majority may have undermined the Ohio Supreme Court's valued position as defender of the state's constitution." Note, *State Tort Reform—Ohio Supreme Court Strikes Down State General Assembly's Tort Reform Initiative*—State ex rel. Ohio Academy of Trial Lawyers v. Sheward*, 715 N.E.2d 1062 (Ohio 1999)*, 113 Harv.L.Rev. 804, 809 (2000).

{¶ 17} This court beat a hasty retreat from *Sheward* soon after it was decided. We have explicitly relied on *Sheward* to find public-right standing in only one other case. *See State ex rel. Ohio AFL-CIO v. Bur. of Workers' Comp.*, 2002-Ohio-6717, ¶ 12 (allowing two unions and a union president to challenge the constitutionality of a legislative enactment by way of an original action). In another case decided that same year, the court allowed a labor union to file an original action challenging an action taken by the administrator of the Bureau of Workers' Compensation. *See State ex rel. United Auto Aerospace & Agricultural Implement Workers of Am. v. Bur. of Workers' Comp.*, 2002-Ohio-2491. Although the majority in that case did not cite *Sheward* or the public-right doctrine, the dissent noted that the relators had relied on them in litigating the action. *Id.* at ¶ 26 (Moyer, C.J., dissenting).

{¶ 18} Since 2002, we have not conferred *Sheward* public-right standing in a single case. Instead, we have recognized the public-right doctrine as an anomaly in our caselaw, but have stopped just short of overruling *Sheward*. In

*ProgressOhio.org*, for example, we declined to export the *Sheward* public-right doctrine from original actions filed in this court to actions filed in the courts of common pleas. 2014-Ohio-2382 at ¶ 10-11. At the same time, "[w]e recognize[d] . . . broader concerns about the overall validity of *Sheward* and the public-right doctrine," noting that "*Sheward* was a deeply divided, four-to-three decision" and that it "remain[ed] controversial." *Id.* at ¶ 13. Nonetheless, we found it unnecessary "to reevaluate *Sheward*," because our conclusion that its doctrine did not apply to cases filed in common pleas courts made it unnecessary for us to do so. *Id.*

{¶ 19} We went further in *State ex rel. Food & Water Watch v. State*, 2018-Ohio-555. In that case, we observed that *Sheward* "essentially allows this court to engage in policy-making by ruling on the legislation of the General Assembly in cases that lack an injured party, i.e., a party that can establish traditional standing." *Id.* at ¶ 30. *Sheward*, we explained, "ha[d] been heavily criticized" for allowing issues of great interest to the public to be adjudicated without standing, resulting in """political opportunism, allowing the majority to invalidate a disfavored law using a questionable approach."' " *Id.* at ¶ 28, quoting *Ohio AFL-CIO* at ¶ 62 (Moyer, C.J., dissenting), quoting Tracy, Ohio ex rel. Ohio Academy of Trial Lawyers v. Sheward: *The End Must Justify the Means*, 27 N.Ky.L.Rev. 883, 885 (2000). And we identified as "perhaps a more egregious and problematic abuse" the fact that the doctrine "permits this court to issue opinions in cases in which there has been no injury, resulting in advisory opinions, which long-standing Ohio law prohibits this court from issuing." *Id.* at ¶ 29, citing *Fortner*, 22 Ohio St.2d at 14.

{¶ 20} In the end, though, we stopped just shy of overruling *Sheward* in *Food & Water Watch*. We characterized "any authority provided by *Sheward*" to be, "at best, questionable." *Id.* at ¶ 30. And, we observed, "[t]his court has not granted a public-right-doctrine exception to standing pursuant to *Sheward* in the past 15 years, and we decline to do so today." *Id.* at ¶ 31. But rather than directly

8

overrule *Sheward*, we said, "*Even assuming* that this court would still grant a party a public-right-doctrine exception to standing in the appropriate 'rare and extraordinary case,' [the relator] ha[d] not met its burden to demonstrate that this case is . . . worthy of the exception." (Emphasis added.) *Id.*

{¶ 21} There is nothing good that comes from pretending that *Sheward* is still good law. Not only is *Sheward*'s public-right standing contrary to our well-established principles, but the content of the doctrine is so vague and amorphous as to make principled judicial application of the doctrine nearly impossible. How is a court to determine when something is of such "great importance and interest to the public," *Sheward* at ¶ 33, that it should allow parties to bypass the standing requirement and other normal judicial procedures? On what basis is tort reform of such public importance but not state economic-development policy? *Compare Sheward*, 1999-Ohio-123, *with ProgressOhio.org, Inc.*, 2014-Ohio-2382. Why are challenges to worker's compensation reforms of sufficient importance to ignore the standing requirement, but not the protection of the environment? *Compare Ohio AFL-CIO*, 2002-Ohio-6717, *with Food & Water Watch*, 2018-Ohio-555. Because the "public-rights exception has no set parameters . . . it [is] nearly impossible to apply." Elia, 86 U.Cin.L.Rev. at 1039. Indeed, the continued existence of the doctrine in our caselaw invites judges to engage in standardless policymaking.

{¶ 22} Because we have not overruled *Sheward*, we have had to jump through hoops to avoid its application. In some cases, we have dismissed its application with little more than a sentence or two. *See, e.g.*, *State ex rel. Leslie v. Ohio Hous. Fin. Agency*, 2005-Ohio-1508, ¶ 47. In other cases, we have attempted to draw factual distinctions to avoid following its doctrine. *See, e.g.*, *State ex rel. Ullmann v. Husted*, 2016-Ohio-5584, ¶ 9-14 (lead opinion); *State ex rel. Ohio Stands Up!, Inc. v. DeWine*, 2021-Ohio-4382, ¶ 8. And sometimes we have decided not to consider it at all. *See, e.g.*, *Ohioans for Concealed Carry, Inc. v. Columbus*, 2020-Ohio-6724, ¶ 8, fn. 1. But while *Sheward* and its public-right doctrine have

seemed all but dead, they have clung to life. *See State ex rel. Walgate v. Kasich*, 2016-Ohio-1176, ¶ 53 (Pfeifer, J., concurring in part and dissenting in part) ("As far as I can tell, public-right standing continues to exist in Ohio. But this court continues to treat this form of standing, and the litigants who rely on it, dismissively." [citation omitted]); *Ullmann* at ¶ 16 (O'Neill, J., dissenting) ("I would hold that [the relator] has standing under the public-right doctrine").

**{¶ 23}** The *Sheward* public-right doctrine has become this court's "ghoul in a late-night horror movie that repeatedly sits up in its grave and shuffles abroad," *Lamb's Chapel v. Ctr. Moriches Union Free School Dist.*, 508 U.S. 384, 398 (1993) (Scalia, J., concurring in the judgment). It is time we consign it to the fate it deserves. We therefore overrule *State ex rel. Ohio Academy of Trial Lawyers v. Sheward*, 1999-Ohio-123, and hold that neither Martens nor future litigants may rely on it to bypass our well-established standing requirement.

*C. Martens has not established taxpayer standing*

**{¶ 24}** Martens also makes a vague claim that he is entitled to "taxpayer standing." Under Ohio's taxpayer-lawsuit provisions, a taxpayer may file an action on "behalf of a municipal corporation," R.C. 733.59, or in "the name of the state," R.C. 309.13, if the government fails to pursue a lawsuit after a written request from the taxpayer. In such cases, the standing requirement is satisfied because the municipal corporation or the state is the actual party in interest and the General Assembly has explicitly given the taxpayer authority to sue on the government's behalf. Ohio has recognized such actions for over 150 years. *See* Act of Mar. 3, 1860, Section 13, 57 Ohio Laws 16, 18 (precursor to R.C. 733.59). "In the absence of statutory authority, however, a taxpayer lacks legal capacity to institute a taxpayer action unless he has some special interest in the public funds at issue." *State ex rel. Dann v. Taft*, 2006-Ohio-2947, ¶ 13, citing *Masterson* at paragraph one of the syllabus.

**{¶ 25}** Martens argues that he has taxpayer standing because he has alleged that the courts in Hancock County are illegally expending money when they hear cases that they lack jurisdiction over. But he has not asserted any special interest in the courts' funds. Nor has he cited any statutory authority authorizing him to bring a taxpayer suit in this case. Therefore, even if Martens could show that the courts were illegally expending funds, he has not established taxpayer standing.

**{¶ 26}** Martens also suggests that he would not be required to establish standing if we determined that the Findlay Municipal Court and the Hancock County Court of Common Pleas patently and unambiguously lacked jurisdiction over municipal-income-tax cases. But he cites no authority to support that suggestion, and we reject such a holding. As explained above, a party must always establish standing before seeking relief in court. Because Martens lacked standing to bring his mandamus claim, we affirm the Third District's judgment.

## III. CONCLUSION

**{¶ 27}** Because Martens lacked standing to bring this action, the Third District Court of Appeals correctly granted the motion to dismiss the complaint. We affirm its judgment.

Motion for oral argument denied
and judgment affirmed.

———————————

**BRUNNER, J., joined by DONNELLY and STEWART, JJ., concurring in judgment only.**

**{¶ 28}** I agree with the majority's conclusion in Part II(C) of its opinion that relator-appellant, George Martens, lacked standing to file the complaint in this case. Regarding the majority's holding in Part II(B), however, I disagree with its decision to use this case as a vehicle to overrule our decision in *State ex rel. Ohio Academy of Trial Lawyers v. Sheward*, 1999-Ohio-123. I recognize that the reasoning of

*Sheward* has been criticized, and I do not take a position on those criticisms today. Instead, I write separately to explain why it is not proper for this court to reconsider *Sheward* in this case.

**{¶ 29}** To start, there is no urgent need to consider whether to overrule *Sheward* here. Martens's claims—challenging the procedure by which two courts decide local tax cases—fall far outside the public-rights exception to the personal-injury requirement for standing established in *Sheward*. Moreover, there is no indication that the exception is causing problems in courts across the State. We have made clear that the exception does not apply in cases originating in a court of common pleas. *See ProgressOhio.org, Inc. v. JobsOhio*, 2014-Ohio-2382, ¶ 10-11. And even in cases in which *Sheward* could apply—i.e., original actions filed in this court—we have not found the exception applicable in a single decision since 2002.

**{¶ 30}** The majority complains that *Sheward* has nonetheless required us to "jump through hoops to avoid its application." Majority opinion, ¶ 22. But as the majority acknowledges, when presented with an argument based on *Sheward*, we repeatedly have "dismissed its application with little more than a sentence or two" or "decided not to consider it at all." Majority opinion at ¶ 22. Thus, *Sheward* does not seem an egregious hindrance that compels the drastic measure of overruling legal precedent.

**{¶ 31}** Further, by overruling *Sheward*, the majority departs from our established practice before overruling legal precedent. *See, e.g.*, *State ex rel. Dillon v. Indus. Comm.*, 2024-Ohio-744, ¶ 20 (Brunner, J., dissenting) (discussing court's practice of adhering to stare decisis except when factors identified in *Westfield Ins. Co. v. Galatis*, 2003-Ohio-5849, ¶ 48, are present). First, the court of appeals' decision does not mention *Sheward*, nor have we been asked to overrule it by respondents-appellees, the Hancock County Common Pleas and Findlay Municipal Courts. As a result, the materials before us do not provide us with the benefit of

12

any discussion of the merits of the public-rights exception. Although we should ordinarily ask for supplemental briefing from the parties before deciding significant issues not raised by the parties, *see In re Application for Correction of Birth Record of Adelaide*, 2024-Ohio-5393, ¶ 6 (Fischer, J., for affirming the court of appeals' judgment) (collecting cases), the majority declines to do so here, and worse, when the relator is proceeding pro se and is not an attorney. This separate opinion is a call for judicial restraint and respect for the bedrock judicial principle of stare decisis.

**{¶ 32}** The majority opinion's discussion of *Sheward* is woefully deficient—to the point of being affirmatively misleading. It states that the standing requirement is "deeply rooted in our caselaw" and that *Sheward* "abruptly departed" from that caselaw and is "an aberration." Majority opinion at ¶ 11, 13, and 3. With this sweeping generalization, the majority ignores much of the analysis in *Sheward*, in which the court reviewed the history of the judicial power in Ohio, hearkening back to the genesis of the Ohio Constitution in 1802. *See Sheward*, 1999-Ohio-123, at ¶ 11-26. The *Sheward* court also discussed precedent— reviewing caselaw from a period of well over 100 years—during which this court had "taken the position that when the issues sought to be litigated are of great importance and interest to the public, they may be resolved in a form of action that involves no rights or obligations peculiar to named parties." *Id.* at ¶ 33-40 (discussing *In re Assignment of Judges to Hold Dist. Courts*, 34 Ohio St. 431 (1878); *State v. Brown*, 38 Ohio St. 344 (1882); *State ex rel. Meyer v. Henderson*, 38 Ohio St. 644 (1883); *State ex rel. Trauger v. Nash*, 66 Ohio St. 612 (1902); and *State ex rel. Newell v. Brown*, 162 Ohio St. 147 (1954)).

**{¶ 33}** It is paradoxical and absurd in this context for the majority to conclude that *Sheward* "abruptly departed" from "deeply rooted" caselaw while in the same opinion noting that *Sheward* relied on caselaw—namely, *State v. Brown*— that the majority reaffirms, even if declaring that it exists at "the outer bounds of

the standing requirement," majority opinion at ¶ 12. It is disingenuous to overrule as an "aberration" a decision that squarely relies on what is "deeply rooted" in the law and then to call the deeply rooted law an outlier. This type of analysis amounts to results-oriented jurisprudence that is more legislative than judicial in its tenor. We are not the legislature.

{¶ 34} Moreover, the majority opinion erects a proverbial straw man when it suggests that *Sheward* applies whenever the law being challenged concerns a sufficiently important subject matter. See majority opinion at ¶ 22. This limitation obscures the extraordinary circumstances that gave rise to *Sheward*: After we held a number of laws governing civil tort actions invalid because they violated the Ohio Constitution or conflicted with the Civil Rules, the General Assembly enacted Am.Sub.H.B. No. 350, 146 Ohio Laws, Part II, 3867 ("H.B. 350"), which simultaneously *reenacted* provisions we had struck down and expressly declared them constitutional and lawful, contrary to our prior holdings. *See Sheward* at ¶ 9-10 and fn. 7; *id.* at ¶ 47-99. As the majority put it in *Sheward*, H.B. 350 was "no ordinary piece of legislation that happen[ed] to inadvertently cross the boundaries of legislative authority. The General Assembly ha[d] circumvented our mandates, while attempting to establish itself as the final arbiter of the validity of its own legislation." *Id.* at ¶ 96.

{¶ 35} The *Sheward* court, in taking the extraordinary actions of the legislature into account, also placed a significant limitation on its holding: the court made clear that it w[ould] entertain an action under the public-rights exception to the personal-injury requirement only """"when the public injury *by [the court's] refusal* [to entertain the action] w[ould] be serious."""" (Emphasis added.) *Id.*, 1999-Ohio-123, at ¶ 132, quoting *Trauger*, 66 Ohio St. at 616, quoting *Ayres v. Bd. of State Auds.*, 42 Mich. 422, 429 (1880). In his concurring opinion, Justice Pfeifer explained why refusing to hear the case for lack of standing would have caused great public harm: "Twenty-seven thousand tort cases were filed in Ohio in 1998,"

14

and H.B. 350 placed "a global cloud over most of the cases" as well as over cases arising in the future. *Id.* at ¶ 173 (Pfeifer, J., concurring). Hearing the challenges promptly was therefore necessary to "prevent gridlock of our justice system." *Id.* at ¶ 175 (Pfeifer, J., concurring). Today's majority opinion disregards this limitation.

**{¶ 36}** I recognize that there are strong arguments in favor of overruling *Sheward*, but it is highly inappropriate—both procedurally and substantively—to overrule *Sheward* under the circumstances presented in this case. The majority seems to have accomplished this as if by using an intercontinental ballistic missile to obliterate an isolated cache of enemy armaments. And it does so by presenting a one-sided view of *Sheward* without the benefit of a serious and studied discussion or adverse points of view.

**{¶ 37}** Among other things, a more thorough consideration of the relevant issues is warranted because the standing requirement under Ohio law is different from its counterpart in the federal system—and at a fundamental level. In federal courts, standing is grounded in the Cases and Controversies Clause of the United States Constitution. *See* U.S. Const., art. III, § 2. But the Ohio Constitution does not contain the same language as the federal Constitution. So unless we proceed with more deliberation than is apparent here, there is the real risk that we are simply engaging in "lockstepping"—a "'reflexive imitation of the federal courts' interpretation of the Federal Constitution,'" *State ex rel. Cincinnati Enquirer v. Bloom*, 2024-Ohio-5029, ¶ 21, quoting Sutton, *51 Imperfect Solutions: States and the Making of American Constitutional Law* 174 (2018).

**{¶ 38}** With broad pronouncements about what is "deeply rooted" in the law and what is an "aberration" but without considering evidence to the contrary or seeking briefing by the parties, it is evident that the majority has fallen prey to an apparent lust for the more recent trends of re-forming federal constitutional

jurisprudence. This is apparent from the pithy quote from a famous federal jurist appearing in the majority opinion.

{¶ 39} I believe that this court and the public would benefit from the exercise of patience and restraint, traits often attributed to the judicial branch but clearly not reflected in today's majority opinion. The question whether it is necessary and prudent to overrule *Sheward* should be reserved for a more appropriate case in which the issues may be far more fully and fairly heard than in a pro se case with little adversarial argument. Moreover, the majority's rationalizations for overruling *Sheward* are insufficient scaffolding to support that action. Simply stated, the majority opinion comes across as sneaky and strained. I therefore concur in judgment only.

———————————

George Martens, pro se.

Montgomery Jonson, L.L.P., Linda L. Woeber, and Cooper D. Bowen, for appellees.

———————————