[Cite as *Preterm-Cleveland v. Yost*, 2026-Ohio-23.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| PRETERM-CLEVELAND, | : | APPEAL NO.   C-240668 |
| | | TRIAL NO.   A-2203203 |
| PLANNED PARENTHOOD | : | |
| SOUTHWEST OHIO REGION, | | |
| | : | |
| SHARON LINER, M.D., | | *JUDGMENT ENTRY* |
| | : | |
| PLANNED PARENTHOOD GREATER | | |
| OHIO, | : | |
| | | |
| WOMEN'S MED GROUP | : | |
| PROFESSIONAL CORPORATION, | | |
| | : | |
|     and | | |
| | : | |
| NORTHEAST OHIO WOMEN'S | | |
| CENTER, LLC, d.b.a. TOLEDO | : | |
| WOMEN'S CENTER, | | |
| | : | |
|      Plaintiffs-Appellees, | | |
| | : | |
|    vs. | | |
| | : | |
| DAVID YOST, | | |
| ATTORNEY GENERAL OF OHIO, | : | |
| | | |
| BRUCE T. VANDERHOFF, M.D., MBA, | : | |
| DIRECTOR, OHIO DEPARTMENT OF | | |
| HEALTH, | : | |
| | | |
| KIM G. ROTHERMEL, M.D., | : | |
| SECRETARY, STATE MEDICAL | | |
| BOARD OF OHIO, | : | |
| | | |
|    and | : | |
| | | |
| BRUCE R. SAFERIN, D.P.M., | : | |
| SUPERVISING MEMBER, STATE | | |
| MEDICAL BOARD OF OHIO, | : | |
| | | |
|      Defendants-Appellants, | : | |

and

                                     :

MICHAEL C. O'MALLEY,
CUYAHOGA COUNTY PROSECUTOR,   :
et al.,

                                     :

    Defendants.

                                     :

This cause was heard upon the appeal, the record, the briefs, and arguments.

For the reasons set forth in the Opinion filed this date, the judgment of the trial court is affirmed in part and reversed in part, and the cause is remanded.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs be taxed 50% to appellants and 50% to appellees.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**

**Enter upon the journal of the court on 1/7/2026 per order of the court.**

**By:**_____
       **Administrative Judge**

[Cite as *Preterm-Cleveland v. Yost*, 2026-Ohio-23.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| PRETERM-CLEVELAND, | : | APPEAL NO.   C-240668 |
| | | TRIAL NO.   A-2203203 |
| PLANNED PARENTHOOD SOUTHWEST OHIO REGION, | : | |
| | : | |
| SHARON LINER, M.D., | : | *O P I N I O N* |
| | : | |
| PLANNED PARENTHOOD GREATER OHIO, | : | |
| | : | |
| WOMEN'S MED GROUP PROFESSIONAL CORPORATION, | : | |
| | : | |
|    and | : | |
| NORTHEAST OHIO WOMEN'S CENTER, LLC, d.b.a. TOLEDO WOMEN'S CENTER, | : | |
| | : | |
|       Plaintiffs-Appellees, | : | |
| | : | |
|    vs. | : | |
| | : | |
| DAVID YOST, ATTORNEY GENERAL OF OHIO, | : | |
| | : | |
| BRUCE T. VANDERHOFF, M.D., MBA, DIRECTOR, OHIO DEPARTMENT OF HEALTH, | : | |
| | : | |
| KIM G. ROTHERMEL, M.D., SECRETARY, STATE MEDICAL BOARD OF OHIO, | : | |
| | : | |
|    and | : | |
| BRUCE R. SAFERIN, D.P.M., SUPERVISING MEMBER, STATE MEDICAL BOARD OF OHIO, | : | |
| | : | |
|       Defendants-Appellants, | : | |

and
:

MICHAEL C. O'MALLEY,
CUYAHOGA COUNTY PROSECUTOR,    :
et al.,
:

    Defendants.
:


Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal: January 7, 2026


*ACLU of Ohio Foundation*, *B. Jessie Hill*, *Freda J. Levenson*, and *Rebecca Kendis*; *Wilmer Cutler Pickering Hale and Dorr LLP*, *Michelle Nicole Diamond*, *Peter Neiman*, *Alan E. Schoenfeld*, and *Cassandra Mitchell*; and *American Civil Liberties Union* and *Meagan Burrows*, for Plaintiffs-Appellees,[1]

*Dave Yost*, Attorney General of Ohio, *Mathura J. Sridharan*, Solicitor General,[2] *Stephen P. Carney*, Deputy Solicitor General, and *Amanda L. Narog*, Assistant Attorney General, for Defendants-Appellants.

---

[1] Appellees' brief also lists C. Peyton Humphreville and Vanessa Pai-Thompson of Planned Parenthood Federation of America as counsel, pending their admission pro hac vice. But neither Thompson nor Humphreville has moved for permission to appear pro hac vice in this court, so neither has been granted leave to practice before it. *See* Loc.R. 3.2(D). Thompson and Humphreville have not formally signed any of the papers and did not argue the case, however, so we simply disregard their designation on Appellees' brief and omit their names here.
[2] On August 6, 2025, Solicitor General Mathura J. Sridharan was substituted for former Solicitor General T. Elliott Glaiser as counsel of record pursuant to Loc.R. 3.2(E)(3)(b).

CROUSE, Judge.

{¶1}    This case concerns the enforceability of R.C. 2919.195, which the parties variously describe as Ohio's "six-week ban" or the "heartbeat ban." R.C. 2919.195 was enacted as part of 2019 Sub.S.B. No. 23 ("S.B. 23") and prohibits abortions after the detection of fetal cardiac activity.

{¶2}    But this particular appeal is less about abortion, and more about civil procedure and the equitable authority of Ohio's courts. The court below issued a permanent injunction for plaintiffs-appellees, a group of reproductive healthcare organizations and one physician who provides abortion procedures (collectively, "Preterm"). That injunction prohibited defendants-appellants, including the Ohio Attorney General and several other state officials (collectively, "the State"), from enforcing not only R.C. 2919.195's prohibition, but many other provisions enacted or amended by S.B. 23 as well. The State concedes that R.C. 2919.195 is unconstitutional, but contends that the injunction is overbroad.

{¶3}    For the reasons set forth below, we hold that the trial court erred by ruling on the constitutionality of provisions Preterm never alleged to be unconstitutional and misapplied a severability analysis. Accordingly, we reverse the trial court's injunction prohibiting the State from enforcing most of S.B. 23's provisions, leave in place the unchallenged portion restraining enforcement of R.C. 2919.195, and remand the cause for further proceedings.

## I. BACKGROUND

{¶4}    In 2019, the Ohio General Assembly passed S.B. 23. The central provision of S.B. 23 was the newly-enacted R.C. 2919.195, which made it a crime to intentionally "perform or induce an abortion" after the detection of fetal or embryonic cardiac activity, unless doing so was necessary to prevent the pregnant individual's

death or serious bodily injury. *See also* R.C. 2919.19(A)(4) (defining "fetal heartbeat").

{¶5} But S.B. 23 enacted or amended numerous other code provisions as well. It amended and augmented provisions requiring providers to check for and inform patients about fetal or embryonic cardiac activity, and made it a crime to perform or induce an abortion without having done so. *See* R.C. 2919.192 to 2919.194. The bill also added or amended provisions requiring providers to document and report certain information about abortion services they provided. *See* R.C. 2919.171(A) and 2919.196. To enforce these various duties and prohibitions, the bill added new civil and administrative enforcement mechanisms. *See* R.C. 2919.199, 2919.1912, and 4731.22(B).

{¶6} In addition, S.B. 23 enacted or amended various auxiliary provisions, including a series of provisos, R.C. 2919.191, 2919.197, and 2929.198; several statutory definitions, R.C. 2919.19(A)(1), (2), (3), (8), and (13); fallback provisions, should parts of the bill be deemed unenforceable, R.C. 2919.19(B); and a provision naming most (but not all[3]) of S.B. 23's provisions the "Human Rights and Heartbeat Protection Act," R.C. 2919.1913. Finally, the bill added or altered several less-directly-related code provisions, including R.C. 2317.56(C)(2), 2919.1910, and 5103.11, which are not relevant to this appeal.

{¶7} S.B. 23's passage prompted a years-long series of lawsuits and injunctions. Preterm's share of this litigation is ably summarized by the opinion of the court below. *Preterm-Cleveland v. Yost*, Hamilton C.P. No. A-2203203, 2024 Ohio Misc. LEXIS 1477, *7-18 (Oct. 24, 2024) ("*Preterm VI*"). We briefly reiterate the

---

[3] R.C. 2919.1913's naming provision does not include R.C. 5103.11 or 2317.56(C)(2), which were also enacted or amended by S.B. 23.

relevant portions of the saga.[4]

**{¶8}** Shortly after S.B. 23's enactment, many of the plaintiffs in the instant case secured a preliminary injunction against its enforcement from the Federal District Court for the Southern District of Ohio, which held that S.B. 23 was unconstitutional under *Roe v. Wade*, 410 U.S. 113 (1973), and *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833 (1992). *Preterm-Cleveland v. Yost*, 394 F.Supp.3d 796, 804 (S.D.Ohio 2019) ("*Preterm I*"). When the Supreme Court overruled *Roe* and *Casey* three years later in *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022), the district court dissolved that injunction, *Preterm-Cleveland v. Yost*, 2022 U.S. Dist. LEXIS 112700 (S.D. Ohio June 24, 2022) ("*Preterm II*"), and Preterm voluntarily dismissed its complaint. *See Preterm-Cleveland v. Atty. Gen.*, 2022 U.S. Dist. LEXIS 121195 (S.D. Ohio July 7, 2022) ("*Preterm III*").

**{¶9}** Three months later, Preterm filed a complaint in the Hamilton County Court of Common Pleas seeking both a preliminary and a permanent injunction to restrain the State and several county prosecutors from enforcing S.B. 23,[5] as well as a declaration that S.B. 23 was unconstitutional. The trial court preliminarily enjoined enforcement of S.B. 23 in its entirety, except for a handful of provisions. The State appealed that order, but this court dismissed its appeal for want of a final appealable order. *Preterm Cleveland v. Yost*, 2022-Ohio-4540 (1st Dist.) ("*Preterm IV*"). The

---

[4] We note that the parties have referenced (and the trial court described) the ongoing litigation and preliminary injunction in *Preterm-Cleveland v. Yost*, Franklin C.P. No. 24 CV 2634. The parties and the trial court represented that the Franklin County Court of Common Pleas has preliminarily enjoined many of the defendants in this case from enforcing several disputed provisions. The parties agree, however, that the Franklin County proceedings and injunction have no legal effect on Preterm's entitlement to a permanent injunction in *this* case, or on the proper scope of that injunction. We therefore do not further address the Franklin County case in this opinion.

[5] The county prosecutors, though apparently bound by the permanent injunction entered below, were not listed as appellants in the State's notice of appeal. *See* App.R. 3(D) ("The notice of appeal shall specify the party or parties taking the appeal . . . ."); Loc.R. 3.1(A)(1)(a)(i). Nor have they filed their own notice(s) of appeal or sought joinder. *See* App.R. 3(B). Nor have they or their counsel entered an appearance or signed any filing in this court. *See* Loc.R. 3.2.

Ohio Supreme Court accepted the State's appeal of our decision. *See 3/14/2023 Case Announcements,* 2023-Ohio-758.

**{¶10}** While that appeal was pending, the people of Ohio voted to amend our state constitution to include a "Right to Reproductive Freedom" in Article I, Section 22 (the "Reproductive Freedom Amendment" or "Amendment"). As relevant here, the Amendment enshrined the right of "[e]very individual . . . to make and carry out [their] own reproductive decisions, including but not limited to decisions on . . . abortion," prior to the point of "fetal viability." Ohio Const., art. I, § 22(A) and (B). The Amendment also forbade the State to "burden, penalize, prohibit, interfere with, or discriminate against . . . [a] person or entity that assists an individual exercising this right," except in limited circumstances. *Id.* at § 22(B). The Ohio Supreme Court sua sponte dismissed the appeal due to this "change in the law." *Preterm-Cleveland v. Yost,* 2023-Ohio-4570, ¶ 1 ("*Preterm V*").

**{¶11}** Back in the trial court, Preterm amended its complaint to add a claim under the Reproductive Freedom Amendment and, once the State had answered, moved for judgment on the pleadings pursuant to Civ.R. 12(C). *See Preterm VI*, 2024 Ohio Misc. LEXIS 1477, at *17-18. In its trial-court briefing, the State conceded that R.C. 2919.195—the six-week/heartbeat ban provision at the center of S.B. 23—was unconstitutional under the Reproductive Freedom Amendment. *See Preterm VI* at *18. And Preterm, for its part, disclaimed any desire to enjoin the enforcement of S.B. 23's naming provision, R.C. 2919.1913, or its provisions amending or adding to R.C. 2317.56(C)(4), 2919.1910, and 5103.11. *See Preterm VI* at *40-41, 60-63.

**{¶12}** This left what to do about all the *other* provisions enacted or amended by S.B. 23, which we shall call the "disputed provisions." The allegations in Preterm's complaint centered around the harm plaintiffs and others would suffer under

R.C. 2919.195's ban, but not under the disputed provisions. Nevertheless, their prayer for relief sought "a permanent injunction, restraining Defendants . . . from enforcing S.B. 23" as a whole, not merely R.C. 2919.195.

{¶13} The trial court concluded that this gulf between facts pled and relief sought presented a problem of severability. However, it determined that Ohio's test for severability required it to "first determine which provisions are unconstitutional before it [could] properly consider severability." *Preterm VI* at *28. The trial court then went provision by provision, holding unconstitutional S.B. 23's new and amended record-keeping provisions (R.C. 2919.171(A) and 2919.196), check-and-tell provisions (R.C. 2919.193 and 2919.194), and enforcement provisions (R.C. 2919.199, 2919.1912, and 4731.22(B)), as well as certain of the fallback provisions (R.C. 2919.19(B)(2) and (3)). *Preterm VI* at *41-45, 47-50, 51-56, 58-60. The court enjoined enforcement of these purportedly unconstitutional provisions, along with several provisions it deemed inseverable from them, including the statutory provisos (R.C. 2919.191, 2919.197, and 2919.198), the new and amended definitions in R.C. 2919.19(A), and the severability clause in R.C. 2919.19(B)(4). *See Preterm VI* at *45-47, 50, 56-58.

{¶14} The trial court did not enjoin enforcement of any of the undisputed provisions, or of the core check-and-tell provision (R.C. 2919.192), which had not been substantively amended by S.B. 23. *See Preterm VI*, 2024 Ohio Misc. LEXIS 1477, at *37-41, 50-51, 64-65.

{¶15} The State now appeals the issuance of that permanent injunction.

## II. ANALYSIS

{¶16} On appeal, the State challenges the trial court's entry of judgment on the pleadings enjoining enforcement of any of the disputed provisions. The State's two

assignments of error are as follows:

> **First Assignment of Error:** The trial court erred in enjoining enforcement of multiple statutes enacted in the same bill, when plaintiffs did not even identify the challenged statutes in a reply brief, and did not offer any substantive challenge to them.

> **Second Assignment of Error:** The trial court erred in finding various statutes non-severable, when the provisions can stand alone, and some existed for years before being amended in a bill that also included an unconstitutional provision.

(Citations omitted.) Based on the State's arguments, we read its first assignment of error as arguing that, by failing to adequately address the disputed provisions in its motion for judgment on the pleadings, Preterm deprived the trial court of the power to enjoin enforcement of the disputed provisions *at all*. And we read the second assignment of error as arguing that, even assuming the trial court could enjoin the disputed provisions it determined to be inseverable, the court misapplied the severability analysis in doing so.

### *A. Standards*

#### *1. Judgment on the Pleadings*

**{¶17}** Motions for judgment on the pleadings are governed by Civ.R. 12(C) and "are specifically for resolving questions of law." *State ex rel. Midwest Pride IV v. Pontious*, 1996-Ohio-459, ¶ 21, citing *Peterson v. Teodosio*, 34 Ohio St.2d 161, 166 (1973). In resolving a motion for judgment on the pleadings under Civ.R. 12(C), a court must review and accept the undisputed or admitted facts in the parties' pleadings, construe any disputed allegations in favor of the nonmoving party, and then determine whether the moving party is entitled to judgment as a matter of law. *See Pontious* at

10

¶ 21. When the plaintiff is the movant, judgment on the pleadings is proper only if, on the undisputed facts, it appears beyond doubt that (1) the plaintiff would be entitled to relief on her claims, and (2) the defendant would not be entitled to avail himself of any defenses pled in his answer. *See Reister v. Gardner*, 2020-Ohio-5484, ¶ 17; *Pontious* at ¶ 21; *Trinity Health Sys. v. MDX Corp.*, 2009-Ohio-417, ¶ 40 (7th Dist.) (holding that plaintiffs "were not entitled to judgment on the pleadings" because defendants had "presented possible defenses . . . in their answer").

{**¶18**} We review judgments on the pleadings de novo. *Reister* at ¶ 17.

### 2. Injunctions

{**¶19**} Injunctions are tools of equity, granted when "necessary to prevent a future wrong that the law cannot." *Garono v. State*, 37 Ohio St.3d 171, 173 (1988). Where the legislature "exceed[s] its authority by promulgating a law in conflict with the constitution," a court of equity "may enjoin execution of the law, for the protection of the rights of person or property guaranteed by the constitution." *Pfeifer v. Graves*, 88 Ohio St. 473, 487-488 (1913).

{**¶20**} Ohio courts can invoke their equitable authority to enjoin public officials only as an exercise of their "power to decide specific cases between conflicting parties," vested in them by Article 5, Section 1, of the Ohio Constitution. *See State ex rel. Martens v. Findlay Mun. Court*, 2024-Ohio-5667, ¶ 10. Thus, where a party is threatened by some official enforcement of an unconstitutional statute, the party may ask a court of equity to protect their rights by ordering particular "public officers . . . be restrained from all action under" the unconstitutional provision. *See Peck v. Weddell*, 17 Ohio St. 271, 285 (1867*); see also UAW Local Union 1112 v. Philomena*, 121 Ohio App.3d 760, 781 (10th Dist. 1998), citing *Olds v. Klotz*, 131 Ohio St. 447 (1936), paragraph two of the syllabus ("Injunctive relief is warranted when a statute is

unconstitutional, enforcement will infringe upon constitutional rights and cause irreparable harm, and there is no adequate remedy at law.").

{¶21} An order granting an injunction involves two decisions: (1) the decision to issue the injunction, and (2) the decision of what conduct should be enjoined. The first decision, whether to allow an injunction, is not "a matter of strict right" but "a matter of grace," committed to the sound discretion of the trial court. *Perkins v. Quaker City*, 165 Ohio St. 120, 125 (1956); *see also Garono* at 173; *Castillo-Sang v. Christ Hosp. Cardiovascular Assocs.*, 2020-Ohio-6865, ¶ 16 (1st Dist.). And on the second question regarding the injunction's scope, the trial court likewise "retain[s] broad discretion to fashion the terms of an injunction." *Adkins v. Boetcher,* 2010-Ohio-554, ¶ 35 (4th Dist.); *accord*, *e.g.*, *Apostolic Full Gospel Church of Mansfield, Inc. v. Stair*, 2007-Ohio-31, ¶ 14 (5th Dist.); *Ames v. Portage Cty. Budget Comm.*, 2022-Ohio-1905, ¶ 61 (11th Dist.).

{¶22} Both decisions involve a trial court's exercise of discretion, so we will not upset either unless we find an abuse of that discretion. *See Garono*, 37 Ohio St.3d at 173; *Castillo-Sang* at ¶ 16; *Adkins* at ¶ 35; *Stair* at ¶ 14. But a trial court has no discretion to misinterpret the law, *see Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 38-39, so we review nondiscretionary legal questions affecting the issuance or scope of the injunction de novo. *Compare Ames* at ¶ 61 (questions of statutory interpretation reviewed de novo, even in context of an injunction).

### B. Merits

{¶23} In this case, Preterm's complaint[6] clearly alleged that enforcement of R.C. 2919.195's six-week/heartbeat ban threatened to injure its ability to provide

---

[6] Unless otherwise specified, all subsequent references to Preterm's complaint refer to its Second Amended Complaint, operative at the time the trial court entered its order now on appeal.

abortion services prior to the point of fetal viability. Preterm agrees that R.C. 2919.195 is the *only* portion of S.B. 23 that it challenged as substantively unconstitutional. At oral argument, counsel for Preterm stated that it "did not ask the [trial] court to address the constitutionality of those ancillary provisions to the six-week ban." The threatened unconstitutional enforcement of R.C. 1919.195 was the injury that brought Preterm into equity. That threatened enforcement was the central harm that any injunction had to prevent.

**{¶24}** The State does not dispute that enforcement of R.C. 2919.195 would "burden, penalize, prohibit, interfere with, or discriminate against" Preterm for "assist[ing] an individual exercising" their "right to make and carry out [their] own reproductive decisions, including but not limited to decisions on . . . abortion." Ohio Const., art. I, § 22(A) and (B). Nor does the State suggest that R.C. 2919.195 constitutes the "least restrictive means to advance the individual's health in accordance with widely accepted and evidence-based standards of care," *see id.* at § 22(B), or that the trial court lacked a "recognized ground[] of equitable jurisdiction," *see Salem Iron Co. v. Hyland*, 74 Ohio St. 160, 167 (1906). Rather, the State contends that the trial court erred by declaring other unchallenged provisions of S.B. 23 unconstitutional and then restricting enforcement of those unchallenged provisions.

### 1. First Assignment of Error

**{¶25}** In its first assignment of error, the State argues that the trial court committed per-se reversible error by enjoining any of the disputed provisions, because Preterm did not sufficiently challenge those provisions in the memorandum supporting its motion for judgment on the pleadings. We disagree.

**{¶26}** In its complaint, Preterm requested a "permanent injunction, restraining Defendants, their employees, agents, and successors in office from

enforcing S.B. 23" in toto, even though its substantive constitutional claim concerned R.C. 2919.195 alone. As Preterm's counsel explained at oral argument, Preterm's efforts to enjoin "the rest of the provisions of S.B. 23" had "always been a matter of severability."

{¶27} We agree that this is the most natural way of reading the complaint. By seeking bill-wide injunctive relief while only claiming R.C. 2919.195 to be substantively unconstitutional, Preterm's complaint clearly treated S.B. 23's other provisions as inseverable from the six-week/heartbeat ban. If those provisions were inseverable, the trial court could, as a matter of remedial authority, enjoin the State from enforcing them against Preterm.[7]

{¶28} The Ohio Rules of Civil Procedure require that "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded the relief in the pleading." Civ.R. 54(C); *see also Raimonde v. Van Vlerah*, 42 Ohio St.2d 21, 27-28 (1975). In this case, Preterm's complaint and Civ.R. 12(C) motion sought an injunction restraining the State from enforcing most of S.B. 23. The trial court determined that Preterm was entitled to much of the relief it sought, so it entered a judgment granting it.

{¶29} The State's argument about the scope of the trial court's remedial

---

[7] We note that a plaintiff "must prove standing as to each provision the party seeks to have severed from the enactment by demonstrating it suffered or is threatened with direct and concrete injury in a manner or degree different from that suffered by the general public because of each provision." *Preterm-Cleveland, Inc. v. Kasich*, 2018-Ohio-441, ¶ 30. Our opinion today does not address the issue of standing, however. Lack of standing is an affirmative defense that can be waived. *See State ex rel. Tubbs Jones v. Suster*, 1998-Ohio-275, ¶ 19; *State ex rel. Ames v. Portage Cty. Bd. of Revision*, 2021-Ohio-4486, ¶ 17. While the State makes a few passing references to Preterm's standing in this case, it does not argue the issue separately from its two assignments of error—neither of which mention standing. *See* App.R. 12(A)(2). Further, the State's briefing makes no effort to explain why or how Preterm *lacked* standing to challenge any particular provision of S.B. 23. The State has thus failed to properly raise and preserve the issue of standing (even assuming the issue was not waived below), and we decline to go allegation-by-allegation and provision-by-provision to address it on the State's behalf.

authority concerns not the trial court's power to grant relief, therefore, but principles of notice and party presentation. In essence, the State argues that it was blindsided by the severability issue, because Preterm did not mention the issue until its reply brief. This failure to raise the issue initially, the argument goes, deprived it of an opportunity to respond.

**{¶30}** But the State never sought leave to file a sur-reply in the trial court, which would have given it the chance to offer its response to any new argument in Preterm's reply brief. And even assuming that the trial court erred by failing to give the State an opportunity to respond, that error would not necessarily warrant reversal. Generally, "'an appellant, in order to secure reversal of a judgment against him, must not only show some error but must also show that that error was prejudicial to him.'" *See Hampel v. Food Ingredients Specialties, Inc.*, 2000-Ohio-128, ¶ 56, quoting *Smith v. Flesher*, 12 Ohio St.2d 107, 110 (1967); *see also* Civ.R. 61. The State must therefore show that its missed opportunity made a legal difference.

**{¶31}** The State points to *Mitseff v. Wheeler*, 38 Ohio St.3d 112 (1988), and the subsequent line of cases holding that "it is reversible error to award summary judgment on grounds not specified in the motion for summary judgment." (Cleaned up.) *See State ex rel. Sawicki v. Court of Common Pleas*, 2009-Ohio-1523, ¶ 27; *accord Ackman v. Mercy Health West Hosp., L.L.C.*, 2023-Ohio-2075, ¶ 18 (1st Dist.). *See also, e.g., Johnson v. Univ. of Cincinnati*, 68 Ohio App.3d 141, 144-145 (1st Dist. 1991) (trial court erred in granting summary judgment for defendant on merits, where motion raised only statute of limitations). The State argues that this per-se reversal rule applies equally to judgments on the pleadings under Civ.R. 12(C).

**{¶32}** But the *Mitseff* exception to the rule of prejudicial error is uniquely tailored to the burden-shifting required under Civ.R. 56. On summary judgment, the

moving party must state with particularity the facts it believes are undisputed, so that the nonmoving party has a chance to *introduce evidence* showing that disputes of fact exist. *See Mitseff* at 115; Civ.R. 56(E); *see also Smathers v. Glass*, 2022-Ohio-4595, ¶ 31. Without notice, how could the nonmoving party know what evidence to put into the record? And without the opportunity to introduce such evidence, how could the nonmoving party ever hope to show prejudice on appeal, where they will be limited to that same underdeveloped summary-judgment record? *See* App.R. 9(A)(1) and 12(A)(1)(b).

**{¶33}** Under Civ.R. 12(C), by contrast, the trial court "is restricted solely to the allegations in the pleadings." *Peterson*, 34 Ohio St.2d at 166. Judgments on the pleadings concern only legal arguments, and appellate review is de novo. *See Reister*, 2020-Ohio-5484, at ¶ 17. Showing prejudice from a late-breaking legal issue is therefore simple: the appellant can simply make to the appellate court whatever legal argument they *would have made* to the trial court. If that argument shows the trial court's judgment on the pleadings was legally incorrect, then the appellant was prejudiced; if it doesn't, then they weren't.

**{¶34}** We therefore decline to extend the per-se reversal rule of *Mitseff* and *Sawicki* to the context of motions for judgment on the pleadings under Civ.R. 12(C). The court below did not commit reversible error simply by addressing severability. The State's first assignment of error is overruled.

### 2. *Second Assignment of Error*

**{¶35}** In its second assignment of error, the State argues that the trial court erred in conducting a severability analysis by "look[ing] to a provision's potential constitutional concerns, even if those have not been raised or briefed," instead of simply determining whether that provision can stand alone. On this, we agree.

**{¶36}** Severability (or, rather, inseverability) provides a basis on which a court can enjoin enforcement of provisions beyond those provisions alleged to be unconstitutional. One statutory provision is considered "severable" from another if the one can stand on its own, even should the other be found unconstitutional and so unenforceable. A severability analysis requires a court to consider a larger statutory scheme infected by a single unconstitutional provision and to determine whether the unconstitutional provision has rendered the whole edifice unenforceable. This is, at bottom, a question of statutory interpretation: what should the court understand the law to be, given that the unconstitutional provision cannot be enforced? *See* Baude, *Severability First Principles*, 109 Va.L.Rev. 1, 5-6 (2023) ("The 'severability' question arises when there are conflicting legal commands. . . . [W]e know what the law *is not*—not the unconstitutional thing. The severability question tries to answer what the law is—what *is* the law, in light of what the law *is not*?").

**{¶37}** Ohio courts have long assessed severability by asking three questions:

"(1) Are the constitutional and the unconstitutional parts capable of separation so that each may be read and may stand by itself? (2) Is the unconstitutional part so connected with the general scope of the whole as to make it impossible to give effect to the apparent intention of the Legislature if the clause or part is stricken out? (3) Is the insertion of words or terms necessary in order to separate the constitutional part from the unconstitutional part, and to give effect to the former only?"

*Geiger v. Geiger*, 117 Ohio St. 451, 466 (1927), quoting *State v. Bickford*, 147 N.W. 407, 409 (N.D. 1913); *accord State v. Noling*, 2016 Ohio 8252, ¶ 34. "A portion of a statute can be excised only when the answer to the first question is yes and the answers to the second and third questions are no." *Noling* at ¶ 35.

**{¶38}** Where a court determines that some provision cannot be severed from a second, unconstitutional provision, it will treat both provisions as inoperative, on the theory that the inseverable provision cannot or should not be enforced without the unconstitutional one. Thus, a public official acting to enforce either provision would act without statutory authorization, and might, in a proper case, be enjoined from enforcing either.

**{¶39}** The court below reasoned that it could not determine which disputed provisions were severable from R.C. 2919.195 until it had "first determine[d] which provisions [were] unconstitutional." *Preterm VI*, 2024 Ohio Misc. LEXIS 1477, at *28. The court then enjoined as substantively unconstitutional numerous disputed provisions. This was error.

**{¶40}** Statutory provisions whose constitutionality have not been challenged—like the disputed provisions here—are presumptively constitutional, *see State v. Romage*, 2014-Ohio-783, ¶ 7, and should continue to be presumed so for purposes of a severability analysis. We acknowledge that *Geiger* instructs courts "'to separate the constitutional part from the unconstitutional part.'" *Geiger*, 117 Ohio St. at 466, quoting *Bickford*, 147 N.W. at 409. But a court's power of constitutional review comes into play only as an incident of the need to resolve a dispute between parties—as when a plaintiff seeks protection against a public official's threatened enforcement of an allegedly unconstitutional provision. *Geiger* did not displace the presumption of constitutionality or expand this judicial function by turning trial courts into roving seekers of constitutional error, whether challenged or not. *See Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923) (noting that courts have no "power per se to review and annul acts of [legislation] on the ground that they are unconstitutional," but merely to "enjoin[] . . . the acts of the official, the statute notwithstanding"). Thus,

*Geiger*'s references to the "unconstitutional" and "constitutional" provisions must be understood to refer respectively to those challenged provisions the court has held to be unconstitutional, and the remaining unchallenged provisions that are presumed to be constitutional.

**{¶41}** The trial court should have presumed the disputed provisions to be constitutional before assessing whether, under *Geiger*, they were severable from R.C. 2919.195. Accordingly, we hold that the trial court erred by engaging in a substantive analysis of any of the provisions of S.B. 23 beyond R.C. 2919.195—the sole provision on whose unconstitutional enforcement Preterm based its substantive claim for equitable relief. The State's second assignment of error is, accordingly, sustained.

### *C.  Relief*

**{¶42}** The trial court's misapplication of the severability doctrine was reversible error. *See State v. Jones*, 2025-Ohio-5389, ¶ 2, 20 (application of incorrect legal standard was reversible error). However, we decline Preterm's request to perform the proper severability analysis ourselves. Although severability presents a question of law, the ultimate question of an injunction's scope is addressed to the trial court's discretion. *See Ames*, 2022-Ohio-1905, at ¶ 61 (11th Dist.), citing *Adkins,* 2010-Ohio-554, at ¶ 35 (4th Dist.). Where discretionary decisions remain, remand is the appropriate remedy. *See Fiedeldey v. Finneytown Local School Dist. Bd. of Edn.*, 2025-Ohio-5831, ¶ 46 (1st Dist.) ("We cannot exercise the trial court's discretion for it; we can only say that such discretion was not exercised properly here. We therefore reverse . . . and remand . . . ."); *compare Jones* at ¶ 23-24; *Yawei Zhao v. Zeng*, 2003-Ohio-3060, ¶ 14 (1st Dist.) (remanding because application of the relevant doctrine was "entrusted to the discretion of the trial court").

### III. CONCLUSION

**{¶43}** In sum, we overrule the State's first assignment of error and sustain its second. The trial court did not reversibly err in reaching the question of severability, but it did err in assessing the substantive constitutionality of any of the disputed provisions under the rubric of severability. Accordingly, we reverse the judgment of the trial court to the extent it enjoined the enforcement of any of the disputed provisions enacted or amended by S.B. 23, and we remand the cause to the trial court for further proceedings consistent with the law and this opinion.

**{¶44}** We reiterate, however, that our reversal of the trial court's judgment is not wholesale. *First*, the State has not challenged the portion of the trial court's order enjoining it from enforcing R.C. 2919.195. *Second*, none of the county-prosecutor defendants filed notices of appeal, so we lack jurisdiction to alter the trial court's order insofar as it applies to them. *Third*, Preterm did not cross-appeal the portion of the trial court's judgment declining to extend its injunction to the portions of R.C. 2919.1910, 5103.11, 2919.1913, or 2317.56(C)(2) enacted or amended by S.B. 23. In all three respects, the trial court's judgment remains in effect, untouched by our decision.

Judgment affirmed in part, reversed in part, and cause remanded.

**KINSLEY, P.J.,** and **BOCK, J.,** concur.