[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Jones*, Slip Opinion No. 2025-Ohio-5389.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2025-OHIO-5389

THE STATE OF OHIO, APPELLANT, *v.* JONES, APPELLEE.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Jones*, Slip Opinion No. 2025-Ohio-5389.]

*Criminal law—R.C. 2945.67(A)—App.R. 5(C)—Under App.R. 5(C), in seeking leave to appeal certain trial-court decisions, the State must claim that errors occurred in trial-court proceedings and must show how likely it is that those errors did in fact occur—Court of appeals erred in denying the State leave to appeal trial court's decision granting appellee a new trial by failing to determine whether the State had demonstrated a high enough probability of trial-court error to warrant a discretionary appeal—Court of appeals' judgment reversed and cause remanded to court of appeals.*

(No. 2023-0772—Submitted February 13, 2025—Decided December 4, 2025.)

APPEAL from the Court of Appeals for Hamilton County,

No. C-230005.

_____

KENNEDY, C.J., authored the opinion of the court, which DEWINE, TUCKER, HAWKINS, and SHANAHAN, JJ., joined. FISCHER, J., dissented, with an opinion joined by BRUNNER, J. MICHAEL TUCKER, J., of the Second District Court of Appeals, sat for DETERS, J.

**KENNEDY, C.J.**

{¶ 1} Over 31 years ago, Rhoda Nathan was brutally robbed and murdered. A jury of appellee Elwood Jones's peers found that he had committed capital offenses and recommended the death penalty, which the sentencing court imposed. Jones's convictions and sentence withstood each challenge Jones leveled against them, including on direct appeal to this court, *see State v. Jones*, 2000-Ohio-187 ("*Jones I*"), until the trial court below granted him a new trial, *see* Hamilton C.P. No. B95-08578 (Dec. 20, 2022). And after the First District Court of Appeals denied appellant, the State of Ohio, leave to appeal the trial court's decision granting Jones a new trial, the case is before us once again.

{¶ 2} This case presents a simple question of law: Did the court of appeals apply the correct legal standard in reviewing the State's motion for leave to appeal the trial court's decision granting Jones a new trial? It did not, and that is reversible error.

{¶ 3} The court of appeals failed to determine whether the State had demonstrated a high enough probability of trial-court error to warrant a discretionary appeal. We therefore reverse the First District's judgment denying the State leave to appeal the trial court's decision granting Jones a new trial and remand this matter to the appellate court for it to apply the correct standard in deciding whether to grant or deny the State's motion for leave to appeal.

**Facts and Procedural Background**

{¶ 4} A Hamilton County jury found Jones guilty of Nathan's murder, convicting him on counts of aggravated felony murder, aggravated burglary, and

aggravated robbery. The trial court imposed the death penalty. Important here, evidence at trial showed that Nathan's one-of-a-kind pendant was missing and that one like it had been found by police in a toolbox in Jones's vehicle. *Jones I*, 2000-Ohio-187, at ¶ 5, 11. Also, Jones suffered an injury to his hand on the day of Nathan's death, *id.* at ¶ 6, and that wound became infected with *Eikenella corrodens*, which can occur with a fist-to-mouth injury, *id.* at ¶ 14. One of Nathan's teeth had been knocked out of her mouth during the assault. *Id.* at ¶ 4, 24, 68.

{¶ 5} Jones's convictions and death sentence were affirmed on direct appeal. *See State v. Jones*, 1998 WL 542713, *14 (1st Dist. Aug. 28, 1998); *Jones I* at ¶ 100. His petition for postconviction relief, which included claims that the State had suppressed material evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), was denied. *State v. Jones*, 2000 WL 1886307, *1, 3-4, 14 (1st Dist. Dec. 29, 2000). The First District affirmed the trial court's judgment denying the postconviction petition, *id.*, and we declined Jones's discretionary appeal, *State v. Jones*, 91 Ohio St.3d 1510 (2001).

{¶ 6} In 2001, Jones petitioned a federal district court for a writ of habeas corpus, again arguing that exculpatory and impeachment evidence had been suppressed in violation of *Brady*. *Jones v. Bagley*, 2010 WL 654287, *5-7, 38-39 (S.D.Ohio Feb. 19, 2010) ("*Jones II*"). The district court dismissed the habeas petition, *id.* at *1, and the United States Court of Appeals for the Sixth Circuit affirmed the district court's judgment, *Jones v. Bagley*, 696 F.3d 475, 479, 490 (6th Cir. 2012) ("*Jones III*").

{¶ 7} In 2019, Jones sought leave to file a motion for new trial based on newly discovered evidence and prosecutorial misconduct. The trial court granted Jones leave. At an evidentiary hearing, Jones presented evidence that the State had withheld a tip about an alternate suspect—Delores Suggs testified that she told police that a woman named Linda Reed had said that her husband had admitted murdering Nathan. Jones also presented evidence that the State was aware that

Nathan's pendant was not one of a kind. He submitted proof that Nathan had tested positive for Hepatitis B at the time of her death and that had Jones's hand injury been caused by contact to Nathan's mouth, he would be infected with Hepatitis B, which he is not. Lastly, Jones presented an expert who contradicted the trial testimony of the State's expert that the only way Jones could have gotten *Eikenella corrodens* in his hand was by punching someone in the mouth—Jones's expert testified at the evidentiary hearing that Jones could have gotten the *Eikenella corrodens* bacteria in his wound by putting his mouth on it.

{¶ 8} The trial court granted Jones's motion for new trial, concluding that the State had suppressed material evidence in violation of *Brady* and that Jones had presented newly discovered scientific evidence warranting a new trial. Hamilton C.P. No. B95-08578, 6-17 (Dec. 20, 2022).

{¶ 9} The State sought leave to appeal the trial court's decision granting Jones a new trial, asserting two assignments of error: (1) "the trial court erred as a matter of law by finding Jones' double-hearsay evidence material under *Brady*," and (2) "the trial court erred as a matter of law by re-litigating meritless *Brady* claims already rejected by the federal courts."

{¶ 10} The First District denied the State's motion for leave to appeal. No. C-230005, 2 (1st Dist. Mar. 9, 2023). The court of appeals noted that the State's assignments of error attacked only the trial court's findings that the prosecution had suppressed material evidence in violation of *Brady* and that the State had not challenged the trial court's decision that newly discovered scientific evidence was an independent ground for granting a new trial. *See* No. C-230005 at 1 (1st Dist. Mar. 9, 2023). Because the State had not challenged both separate and independent grounds for granting a new trial, the court of appeals determined that "the appeal would be futile." *Id.* at 1-2. Even if it agreed with the State's assignments of error, the court of appeals said, the trial court's decision granting Jones a new trial would

4

stand on the unchallenged finding that newly discovered scientific evidence warranted a new trial. *Id.*

{¶ 11} The State applied for reconsideration, asserting that if the court of appeals agreed with its first assignment of error, reversal of the trial court's decision granting Jones a new trial would necessarily result. It said that the newly discovered scientific evidence was not at issue with the trial court, because the trial court had granted a hearing only on the alternate-suspect issue. The State further presented an alternative argument that a challenge to the trial court's finding that newly discovered scientific evidence warranted a new trial was subsumed within the State's second assignment of error.

{¶ 12} The court of appeals denied the State's application for reconsideration, determining that the State had raised new arguments in its application that it had not asserted in its motion for leave to appeal. No. C-230005, 1-2 (1st Dist. May 3, 2023).

{¶ 13} The State appealed to this court, and we accepted jurisdiction over its second proposition of law: "An appellate court abuses its discretion by denying leave to appeal the grant of a new trial in a 26 year old capital case where the State complies with App.R. 5(C)'s requirements, timely sets forth errors for review and shows it has evidentiary support for the claimed errors." *See* 2023-Ohio-4526.

## Law and Analysis

{¶ 14} R.C. 2945.67(A) affords the State the right to appeal certain trial-court decisions—those dismissing all or part of a criminal or juvenile-delinquency case, suppressing evidence, returning seized property, granting postconviction relief under R.C. 2953.21 through R.C. 2953.24, or imposing a felony sentence. R.C. 2945.67(A) also provides that the State "may appeal by leave of the court to which the appeal is taken any other decision, except the final verdict, of the trial court in a criminal case or of the juvenile court in a delinquency case." The State

therefore must seek leave to appeal a trial court's decision granting a defendant a new trial in a criminal case. *See State v. Matthews*, 1998-Ohio-433, syllabus.

{¶ 15} App.R. 5(C) establishes procedures that the State must follow in filing a motion for leave to appeal "an order of the trial court." Relevant here, App.R. 5(C) directs the State to set forth in its motion for leave "the errors that [it] claims occurred in the proceedings of the trial court." In addition, App.R. 5(C) requires that the motion be "accompanied by affidavits, or by the parts of the record upon which the [State] relies, to show the probability that the errors claimed did in fact occur."

{¶ 16} Several things jump out from the language of App.R. 5(C). In the first sentence of the rule, the State has to "claim" that errors occurred in the trial-court proceedings. A "claim" is an assertion that might or might not end up being true. *See Webster's Third New International Dictionary* (2002). The State just has to "claim" that errors occurred in the trial-court proceedings, regardless of whether it will ultimately succeed if leave to appeal is granted.

{¶ 17} As for the second sentence of App.R. 5(C), once the State claims that errors occurred in the trial-court proceedings, it must establish "the probability" that the errors claimed did in fact occur. Importantly, there is a difference between *a* probability and *the* probability. *A* probability is the state of being probable, i.e., that something is more likely than not to be true. *See Black's Law Dictionary* (12th Ed. 2024). We think of this as the preponderance-of-the-evidence standard. *The* probability is the degree to which something might occur, i.e., the amount of confidence that something may turn out to be true. *See id.* An example is *the* probability of rain in the forecast, such as being at 40 percent. *The* probability that something may occur is some chance greater than zero but lower than 100 percent—*the* probability of something can therefore be more or less than a preponderance.

6

{¶ 18} The State's burden in seeking leave to appeal is therefore not an onerous one. Under App.R. 5(C), the State must claim that errors occurred in the trial-court proceedings and it must show how likely it is that those errors did in fact occur. The court of appeals, in reviewing a motion for leave to appeal, cannot disregard this standard altogether.

{¶ 19} We have said that the decision to grant or deny a motion for leave to appeal in a criminal case is solely within the discretion of the court of appeals. *State v. Fisher*, 35 Ohio St.3d 22 (1988), paragraph two of the syllabus. Therefore, review of that decision is for an abuse of discretion. An ""'abuse of discretion'" . . . implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" (Ellipsis added in *White*.) *State v. White*, 2008-Ohio-1623, ¶ 46, quoting *State v. Adams*, 62 Ohio St.2d 151, 157 (1980). However, we have held that "courts lack the discretion to make errors of law, particularly when the [inferior] court's decision goes against the plain language of a statute or rule," *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 39.

{¶ 20} It is plain that the court of appeals abused its discretion in denying the State leave to appeal the trial court's decision granting Jones a new trial. The court of appeals failed to grapple with the standard of review created by App.R. 5(C). It did not address whether the State had shown the probability that the errors claimed did in fact occur—its decision does not even include the word "probability." *See* No. C-230005 at 1-2 (1st Dist. Mar. 9, 2023). "Applying the wrong legal standard . . . is . . . reversible error under an abuse-of-discretion standard." *State v. Bunch*, 2022-Ohio-4723, ¶ 25 (review of error in postconviction proceeding).

{¶ 21} Also, the appellate court decided that an appeal of the trial court's decision granting Jones a new trial would be futile because, it found, the State had not challenged an alternative ground on which the trial court had granted a new trial—the discovery of purportedly new medical evidence relating to mouth

bacteria. *See* No. C-230005 at 1-2 (1st Dist. Mar. 9, 2023). However, courts of appeals affirm, modify, or reverse judgments or final orders of inferior courts—not the reasons for those judgments or final orders. Ohio Const., art. IV, § 3(B)(2). And at this stage of the proceedings, the State did not have to prove that it would actually succeed in reversing the trial court's decision. It just had to show "the probability that the *errors claimed*"—i.e., the ones it asserted—"did in fact occur" to meet the standard required for filing a motion for obtaining leave to appeal. (Emphasis added.) App.R. 5(C).

{¶ 22} For these reasons, the court of appeals abused its discretion in denying the State leave to appeal the trial court's decision granting Jones a new trial.

**Conclusion**

{¶ 23} It is a testament to the American system of justice that the courthouse doors have remained open for Jones even though his convictions and death sentence were affirmed on direct appeal decades ago. And although we reverse the court of appeals' judgment denying the State leave to appeal the trial court's decision granting Jones a new trial, we hold only that it erred by failing to determine whether the State had demonstrated a high enough probability of trial-court error to warrant a discretionary appeal.

{¶ 24} The judgment of the court of appeals is therefore reversed, and this matter is remanded to the First District Court of Appeals for it to apply the correct standard in deciding whether to grant or deny the State's motion for leave to appeal.

Judgment reversed
and cause remanded.

_____

**FISCHER, J., joined by BRUNNER, J., dissenting.**

{¶ 25} The decision to grant or deny a motion for leave to appeal in a criminal case is solely within the discretion of the court of appeals, *State v. Fisher*,

35 Ohio St.3d 22 (1988), paragraph two of the syllabus, although "courts lack the discretion to make errors of law," *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 39. The First District Court of Appeals did not make an error of law in this case, so I would find that it did not abuse its discretion in denying appellant the State of Ohio's motion for leave to appeal under App.R. 5(C) and R.C. 2945.67(A). Therefore, I dissent from the decision of the court.

{¶ 26} The majority asserts that this appeal is about "the correct legal standard in reviewing the State's motion for leave to appeal the trial court's decision granting [appellee, Elwood Jones,] a new trial." Majority opinion, ¶ 2. It is not. The majority holds that the "court of appeals failed to grapple with the standard of review created by App.R. 5(C)." *Id.* at ¶ 20. But App.R. 5(C) does not set forth a standard of review.

{¶ 27} App.R. 5(C) provides:

> When leave is sought by the prosecution from the court of appeals to appeal an order of the trial court, a motion for leave to appeal shall be filed with the court of appeals . . . and shall set forth the errors that the movant claims occurred in the proceedings of the trial court. The motion shall be accompanied by affidavits, or by the parts of the record upon which the movant relies, to show the probability that the errors claimed did in fact occur, and by a brief or memorandum of law in support of the movant's claims. . . .

The rule says nothing about how the court of appeals must evaluate the State's motion for leave to appeal. Granted, the rule does say what the State must include in a motion for leave to appeal. And the court of appeals should consider whether the State met the minimum filing requirements of the rule. But if the State met those minimum filing requirements, then that merely means that the court of

appeals has discretion to grant or deny the motion for leave to appeal. *See Fisher* at paragraph two of the syllabus.

{¶ 28} In this case, the First District denied the State's motion for leave to appeal, not because the State failed to meet the filing requirements of App.R. 5(C), but because "the state fail[ed] to raise any challenge regarding a critical aspect of the trial court's decision," rendering any appeal "futile." No. C-230005, 1 (1st Dist. Mar. 9, 2023).

{¶ 29} The trial court granted Jones's motion for new trial on two separate bases, concluding that (1) the State had withheld material evidence from Jones's defense team prior to his trial in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and (2) Jones had presented newly discovered scientific evidence that satisfied the requirements set forth in *State v. Petro*, 148 Ohio St. 505 (1947), to warrant a new trial. Hamilton C.P. No. B95-08578, 6-17 (Dec. 20, 2022). The trial court held that the following pieces of evidence were withheld by the State and were material under *Brady*: (1) the tip from Delores Suggs suggesting that another man had committed the murder of Rhoda Nathan, Hamilton C.P. No. B95-08578 at 10-11 (Dec. 20, 2022); (2) the facts that Blue Ash police officers spoke with Nathan's family members about her pendant and that one family member told them that the pendant was *not* a custom-made piece and that the engagement ring that other family members thought the pendant was made from was in his possession, *id*. at 13-14; and (3) evidence that Nathan had tested positive for Hepatitis B and that Jones does not have Hepatitis B, *id.* at 8-10. The trial court concluded that because of these *Brady* violations, Jones was entitled to a new trial. Hamilton C.P. No. B95-08578 at 17-18 (Dec. 20, 2022).

{¶ 30} At Jones's trial, the jury heard that Jones injured his hand on the day Nathan was killed and that Nathan had been struck in the face. *State v. Jones*, 2000-Ohio-187, ¶ 6, 24. At the evidentiary hearing on Jones's motion for new trial, Jones presented expert testimony regarding the *Eikenella corrodens* bacteria that had

caused an infection in his hand. Dr. Steven Dale Burdette testified that one of Jones's treating physicians, Dr. John McDonough, wrongly told the jury at trial that the only way Jones could have gotten *Eikenella corrodens* in his hand was by punching someone in the mouth. Dr. Burdette testified that Dr. McDonough was wrong in saying that *Eikenella corrodens* is a rare bacteria, that Dr. McDonough was wrong when he said that *Eikenella corrodens* is found almost always in dental plaque and rarely in saliva, and that Jones could have gotten the *Eikenella corrodens* bacteria in his wound when he put the wound up to his mouth. The trial court held that Dr. Burdette's testimony regarding the *Eikenella corrodens* bacteria met the standard for newly discovered scientific evidence under *Petro* and entitled Jones to a new trial. Hamilton C.P. No. B95-08578 at 14-17 (Dec. 20, 2022).

{¶ 31} In its motion for leave to appeal the trial court's decision granting Jones a new trial, the State asserted two assignments of error challenging the trial court's findings on the *Brady* claims. But neither assignment of error challenged the trial court's conclusion that Dr. Burdette's testimony regarding the *Eikenella corrodens* bacteria and Jones's infection in his hand constituted newly discovered scientific evidence. *See* No. C-230005 at 1 (1st Dist. Mar. 9, 2023). Therefore, the court of appeals determined that "even if [it] agreed with the state's assignments of error as to the *Brady* basis for the trial court's decision, the trial court's decision would still stand, free from attack, as to the *Petro* basis" and that "the appeal would be futile." *Id.* at 1-2.

{¶ 32} The majority asserts that it does not matter that the State failed to appeal all the grounds for the trial court's decision, because "courts of appeals affirm, modify, or reverse judgments or final orders of inferior courts—not the reasons for those judgments or final orders," majority opinion at ¶ 21. In support of this claim, the majority cites Article IV, Section 3(B)(2) of the Ohio Constitution, which says, "Courts of appeals shall have such jurisdiction as may be provided by law to review and affirm, modify, or reverse judgments or final orders of the courts

of record inferior to the court of appeals within the district." But our case law further explains this constitutional provision, and it does not stand for the proposition for which the majority cites it.

{¶ 33} It is true that appellate courts review judgments, not reasons. *See State v. Lozier*, 2004-Ohio-732, ¶ 46. But in practice, this merely means that an appellate court can *affirm* a trial court's judgment that was correct for the wrong reasons. *See id.* ("A reviewing court is not authorized to reverse a correct judgment merely because it was reached for the wrong reason."); *In re G.T.B.*, 2011-Ohio-1789, ¶ 7 ("Nevertheless, we will not reverse a correct judgment simply because it was based in whole or in part on an incorrect rationale."). It does *not* mean that an appellate court must consider reasons that the trial court's judgment may have been wrong that were not raised by the appellant. To the contrary, the appellant has the duty to assert the errors that it claims occurred. *See* App.R. 12(A)(2) ("The court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A)."); *Hungler v. Cincinnati*, 25 Ohio St.3d 338, 341 (1986) (explaining that Article IV, Section 3(B)(2) of the Ohio Constitution sets forth the authority of the appellate courts but that App.R. 12 "draws the parameters of the court of appeals' exercise of its reviewing power" and that "App.R. 12(A) provides that an appellate court need not pass on errors which are not assigned or argued").

{¶ 34} Nevertheless, courts of appeals have discretion to consider assignments of error that were not raised by the appellant if the court so chooses. *See Hungler* at 341 ("Because [App.R. 12(A)] is discretionary, this court has held in *C. Miller Chevrolet[, Inc.] v. Willoughby Hills* (1974), 38 Ohio St.2d 298, 313 N.E.2d 400, that an appellate court may pass on error not assigned by the parties."). But the import of the majority opinion is that the First District did *not* have

discretion to *not* consider the *Petro* error that the State failed to raise. This turns the discretion that courts of appeals have on its head.

{¶ 35} Further, the majority says that it does not matter that the State failed to appeal one of the grounds for the trial court's decision, because "at this stage of the proceedings, the State did not have to prove that it would actually succeed in reversing the trial court's decision," majority opinion at ¶ 21. And that is true—the State did not need to prove in its motion for leave to appeal that the claimed errors occurred—but it still needed to *appeal* all the grounds for the trial court's decision. Otherwise, its appeal would be futile. And denying leave for an appeal that would be futile because the State failed to challenge one of the grounds for the trial court's decision is squarely within the appellate court's discretionary function.

{¶ 36} The First District Court of Appeals correctly exercised its discretion in denying the State leave to appeal the trial court's decision granting Jones a new trial when that appeal would have been futile because the State had not challenged every basis for the trial court's decision. I would therefore affirm the judgment of the First District. Because the majority does not, I respectfully dissent.

_____

Connie Pillich, Hamilton County Prosecuting Attorney, and Philip R. Cummings, Assistant Prosecuting Attorney, for appellant.

Vorys, Sater, Seymour and Pease, L.L.P., David F. Hine, and Emily E. St. Cyr; and Ravert J. Clark, for appellee.

Dave Yost, Attorney General, and Mathura J. Sridharan, Solicitor General, urging reversal for amicus curiae, Ohio Attorney General Dave Yost.

_____