[Cite as *State v. Williams*, 2026-Ohio-1953.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 31517 |
| | |
| Appellant | |
| | |
| v. | APPEAL FROM JUDGMENT |
| | ENTERED IN THE |
| AHMERE D. M. WILLIAMS | COURT OF COMMON PLEAS |
| | COUNTY OF SUMMIT, OHIO |
| Appellee | CASE No. CR-2023-12-3992 |

DECISION AND JOURNAL ENTRY

Dated: May 27, 2026

PER CURIUM.

{¶1} The State of Ohio has attempted to appeal an order of the Summit County Court of Common Pleas that concluded it did not have a duty to compel the testimony of a witness. This Court dismisses the attempted appeal.

I.

{¶2} Ahmere D.M. Williams was indicted for felonious assault and felony murder in connection with the shooting death of T.A. The day before trial started, the State of Ohio filed a motion to call J.P.-W. as a court's witness. During a hearing on the motion before trial, the defense agreed that J.P.-W. had initially told police that he saw Mr. Williams fire a gun at a vehicle in which T.A. was sitting and that he had identified Mr. Williams from a photo array. The trial court took the motion under consideration, and trial began.

{¶3} When J.P.-W. was called as a witness, the State informed the trial court that it believed he would be invoking his Fifth Amendment right against self-incrimination. The trial

court examined J.P.-W. outside of the presence of the jury and, after consulting with his attorney, J.P.-W. exercised his Fifth Amendment right. After considering the parties' arguments, the trial court determined that the State could call J.P.-W. The trial court then told J.P.-W. that he would be called as a witness, and he replied, "I'm still invoking my Fifth Amendment right . . . for fear of additional charges." At that point in the proceedings, the State asked the trial court to grant J.P.-W. immunity pursuant to a written offer "*excluding murder* but for all other offenses relating to the incident on April 12th of 2023 at the Channelwood apartment complex." (Emphasis added.) J.P.-W. told the trial court that the offer of immunity did not change his intention to assert his Fifth Amendment rights.

{¶4} The trial court concluded that notwithstanding the offer of immunity, J.P.-W. "[did] have a legitimate reason to invoke his Fifth Amendment right . . . ." The State moved the trial court to reconsider its ruling. The trial court denied the motion, noting that "I don't think the immunity that is proffered in this case is a blanket immunity. It excludes murder. It also does not have any protections against any sort of federal charges." The trial court issued findings of fact and conclusions of law explaining its decision and concluding that under the circumstances, it did not have a duty under R.C. 2945.44 to compel J.P.-W. to testify.

{¶5} The State filed a notice of appeal asserting that R.C. 2945.67(A) and Crim.R. 12(K) allowed an appeal as of right from the trial court's ruling. In the alternative, the State moved for leave to appeal under R.C. 2945.67(A) and App.R. 5(C). This Court provisionally allowed the appeal to proceed but noted that the question of appealability could be revisited upon final disposition of the appeal.

II.

{¶6}    Under R.C. 2945.67(A), the State of Ohio "may appeal as a matter of right any decision of a trial court in a criminal case . . . [that] grants . . . a motion to suppress evidence. . . ." This includes "[a]ny motion, however labeled, which, if granted, restricts the state in the presentation of certain evidence and, thereby, renders the state's proof with respect to the pending charge so weak in its entirety that any reasonable possibility of effective prosecution has been destroyed. . . ." *State v. Davidson*, 17 Ohio St.3d 132 (1985), syllabus. Stated differently, R.C. 2945.67(A) and Crim.R. 12(K) provide a means for the State to immediately appeal "mistaken evidentiary rulings," even if they occur mid-trial. *State v. Malinovsky*, 60 Ohio St.3d 20, 23 (1991). This rule has been applied to evidentiary motions made by defendants that are framed in various ways. *See e.g. id.* at 21-23 (mid-trial objection to hearsay testimony by the defense); *Davidson* at 133-134 (motion in limine to exclude evidence); *Akron v. Hockman*, 144 Ohio App.3d 262, 263-264 (9th Dist. 2001) (motion to quash a subpoena).

{¶7}    This case is fundamentally different because it does not involve an allegedly "mistaken evidentiary ruling" on motion of or objection by the defendant. This Court is aware of only one case in which the State of Ohio asserted the right to appeal from an order that declined to compel testimony under R.C. 2945.44. *See State v. Neff*, 135 Ohio App.3d 7 (3d Dist. 1999). Even if this Court assumes without deciding that a trial court's decision not to grant a State's motion under R.C. 2945.44 could fall within the scope of R.C. 2945.67(A) and Crim.R. 12(K), however, this case is distinguishable because of the way the State chose to frame the matter to the trial court.

{¶8}    R.C. 2945.44 provides:

(A) In any criminal proceeding in this state or in any criminal or civil proceeding brought pursuant to Chapter 2981. of the Revised Code, if a witness refuses to answer or produce information on the basis of the witness's privilege against self-incrimination, the court of common pleas of the county in which the proceeding is

being held, unless it finds that to do so would not further the administration of justice, shall compel the witness to answer or produce the information, if both of the following apply:

(1) The prosecuting attorney of the county in which the proceedings are being held makes a written request to the court of common pleas to order the witness to answer or produce the information, notwithstanding the witness's claim of privilege;

(2) The court of common pleas informs the witness that by answering, or producing the information the witness will receive immunity under division (B) of this section.

(B) If, but for this section, the witness would have been privileged to withhold an answer or any information given in any criminal proceeding, and the witness complies with an order under division (A) of this section compelling the witness to give an answer or produce any information, *the witness shall not be prosecuted or subjected to any criminal penalty in the courts of this state for or on account of any transaction or matter concerning which, in compliance with the order, the witness gave an answer or produced any information.*

(Emphasis added.) "[T]ransactional immunity" means "immunity from prosecution for any criminal act about which the witness testified." *State ex rel. Leis v. Outcalt*, 1 Ohio St.3d 147, 148 (1982). Transactional immunity signifies that "[t]he government is willing to forgo prosecution of the less culpable witness in order to obtain testimony that is necessary to successfully prosecute the defendant." *State v. Reiner*, 93 Ohio St.3d 601, 604 (2001). The statute contemplates nothing less. The State cannot invoke the procedure outlined in R.C. 2945.44 by proposing incomplete immunity. In this case, however, that is exactly what the State attempted to do. Under these circumstances, this Court cannot conclude that the State can appeal as a matter of right from the trial court's decision not to compel J.P.-W.'s testimony.

{¶9} The State may also "appeal by leave of the court to which the appeal is taken any other decision, except the final verdict, of the trial court in a criminal case . . . ." R.C. 2945.67(A). *See also* App.R. 5(C). "[T]he decision to grant or deny a motion for leave to appeal in a criminal case is solely within the discretion of the court of appeals." *State v. Jones*, 2025-Ohio-5389, ¶ 19. In considering a motion for leave, however, this Court must consider whether the State has claimed

errors in the trial court's proceedings with reference to affidavits or the portions of the record upon which it relies. *Id*. at ¶ 15, citing App.R. 5(C). We must also consider whether the State has "establish[ed] 'the probability' that the errors claimed did in fact occur." *Id*. at ¶ 17, quoting App.R. 5(C).

**{¶11}** The State has maintained, with reference to the parts of the record at issue, that "The Trial Court Improperly Excluded the Testimony of [J.P.-W.]." Nonetheless, having considered the State's motion for leave and the entire record, this Court cannot conclude that the State has established the probability that the claimed errors occurred. *See id.*, citing App.R. 5(C). Accordingly, this Court denies the State's motion for leave to appeal under R.C. 2945.67(A) and App.R. 5(C).

## III.

**{¶12}** This attempted appeal is not an appeal as of right under R.C. 2945.67(A). The State's motion for leave to appeal is denied. Accordingly, the attempted appeal is dismissed.

Appeal dismissed.

———

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

 

JENNIFER HENSAL
FOR THE COURT

 

HENSAL, J.
FLAGG LANZINGER, P. J.
CONCURS.

CARR, J.
DISSENTING.

{¶13} I respectfully dissent from the majority's judgment. For the following reasons, I would grant the State leave to appeal, reverse the trial court's decision, and remand the matter for further proceedings.

{¶14} At least two individuals witnessed the shooting herein: J.W. and J.P.-W. The latter received a phone call before driving J.W., the victim, and another man to the spot where the shooting occurred. There was evidence that, when they arrived, people were standing outside in the parking lot. There was evidence that the two eyewitnesses exited the car while the victim and the fourth man remained in the backseat. Shortly thereafter, one or more individuals approached the vehicle with guns and opened fire. The victim and the fourth man attempted to flee, but both men sustained gunshot wounds. The victim's wound was fatal.

{¶15} J.P.-W. initially told the police that he saw Mr. Williams shoot the victim. He also identified Mr. Williams as the shooter when shown a photo array. One day before trial, he retracted his statement and identification. He said he did not see the shooter and did not want to be involved in the trial.

{¶16}   The State filed a motion to have J.P.-W. called as the court's witness so that both parties might cross-examine him.  The trial court addressed the State's motion on the morning of trial.  Mr. Williams objected to the motion, and the court heard arguments.  The court ultimately took the matter under advisement and moved forward with jury selection.

{¶17}   Once the jury was seated and dismissed for the evening, the trial court notified the parties that it had appointed counsel for J.W. and J.P.-W.  The court indicated that it would not rule on the State's motion to have J.P.-W. called as the court's witness until he was called to the stand.  J.P.-W. would then be subject to voir dire in the presence of counsel before testifying.

{¶18}   J.W. was the first eyewitness the State called to testify.  He appeared with counsel, took the stand outside the presence of the jury, and announced his intention to invoke the Fifth Amendment if asked any questions.  Following an extended discussion, the trial court found J.W. had a legitimate reason to invoke his Fifth Amendment rights and excused him without having him testify before the jury.

{¶19}   Before trial resumed, the State moved the trial court to compel J.P.-W. to testify pursuant to R.C. 2945.44 and an offer of immunity.  The State offered J.P.-W. immunity from prosecution, "excluding murder but for all other offenses relating to the [shooting] incident . . . ."  The State asked the court to question J.P.-W. as to whether he intended to invoke his Fifth Amendment rights.

{¶20}   When it was time for J.P.-W. to testify, the trial court had him take the stand outside the presence of the jury.  His attorney was present along with two prosecutors and two attorneys for Mr. Williams.  The State asked the court to voir dire J.P.-W. based on its understanding that he planned to invoke his Fifth Amendment right.

{¶21} J.P.-W. answered several preliminary questions and agreed that he had been called to testify about what he knew, what he had heard, and what he had seen in this matter. He initially stated that he was prepared to answer questions posed to him on the stand. After conferring with his attorney, however, he stated that he was going to invoke his Fifth Amendment right. The following exchange took place:

THE COURT: Okay. So you do not intend to answer questions?

THE WITNESS: No, ma'am.

THE COURT: You're not going to answer anything that you heard on [the date of the shooting]?

THE WITNESS: No, ma'am.

THE COURT: Anything you saw on [the date of the shooting]?

THE WITNESS: No, ma'am.

THE COURT: You're not going to answer anything that you heard on [the date of the shooting]?

THE WITNESS: No, ma'am.

The court then asked J.P.-W. why he was invoking his right.

{¶22} J.P.-W. initially offered three reasons for asserting his Fifth Amendment right. First, he stated: "Because it's my right." Second, he stated that he "already [had] enough stuff going on with [himself]." Third, he stated that he feared for the safety of his family and himself. When the court asked him if he had any other concerns, he said no. His attorney confirmed that the reasons J.P.-W. offered the court were consistent with the information he had offered her.

{¶23} Following the court's initial inquiry, the State argued that J.P.-W. had failed to tender a reason as to why he believed he would incriminate himself if he testified. Counsel for Mr. Wiliams responded and offered several reasons why J.P.-W. could be implicated criminally. Further discussion ensued, during which the attorney for J.P.-W. acknowledged that the State was

offering her client immunity for his testimony. The attorney stated that, despite the offer of immunity, J.P.-W. did not wish to testify based on concerns "that things may come down the road from that." The court noted that J.P.-W. had not expressed any concern about additional charges. It noted that, when questioned directly, J.P.-W. said the only reason he did not want to testify was because he was afraid of retaliation. The attorney for J.P.-W. responded, "Correct. And that is his reason."

{¶24} Counsel for Mr. Williams asked the trial court whether it would be allowing J.P.-W. to answer questions posed by the State but not the defense. The court responded: "I don't know what the questions are going to be." The court noted that J.P.-W. had said he would not answer any questions regardless of who asked them. The court asked J.P.-W. if he planned to answer questions from anyone, and he said no. The State then once again argued that J.P.-W. had not offered a valid reason for invoking his rights. The State asked the court to compel the witness to testify. J.P.-W.'s attorney indicated that her client understood contempt was a possibility but still did not wish to testify. A side bar ensued.

{¶25} Once the side bar concluded, the trial court indicated that the trial would proceed with the witness testifying. The court informed J.P.-W. that he would be questioned by the parties. The following exchange took place:

> THE COURT: . . . Are you going to answer any questions, sir?
>
> THE WITNESS: I'm still invoking my Fifth Amendment right amendment for fear of additional charges.
>
> THE COURT: Wait. What?
>
> THE WITNESS: I'm still invoking my Fifth Amendment.
>
> THE COURT: Why?
>
> THE WITNESS: Fear of additional charges.

THE COURT: Earlier you said something different.  Did you change your mind?

THE WITNESS: Both.  No, I ain't change my mind.

THE COURT: Why didn't you say that earlier?

THE WITNESS: Because I don't understand all this.

THE COURT: Okay.  So, explain to me what is going on.  You don't want to answer questions, right?

THE WITNESS: For my safety and my family and additional charges.

THE COURT: You have a fear that there will be additional charges if you answer questions?

THE WITNESS: Possibly, yeah.

THE COURT: Additional charges related to this case or other cases?

THE WITNESS: I don't know; other cases, this, I don't know.

Subsequently, the court asked J.P.-W. whether an offer of immunity would change his willingness to testify.  He denied that it would.

{¶26}  The attorney for J.P.-W. confirmed that her client was not interested in immunity and did not want to testify.  The attorney indicated that J.P.-W.'s unwillingness to accept the immunity offer was primarily based on his "concern with the nature of this case" but also with an appeal he had pending in federal court.  The State responded and argued that J.P.-W. had no authority to decline the immunity offer.  The trial court disagreed because the State was not offering full immunity.  The court found that J.P.-W. had "a legitimate reason to invoke his Fifth Amendment right at this time."  Because J.P.-W. had indicated that he was not willing to answer any questions, the court found that it was unnecessary for him to testify in front of the jury.

{¶27}  The trial court allowed the State to file a motion for reconsideration.  At the State's request, it issued written findings of fact and conclusions of law.  Relevant to this appeal, the court reached two separate legal conclusions.  First, it found that J.P.-W. "had a legitimate and

reasonable reason to invoke [his] Fifth Amendment rights." The court reached that conclusion based on the testimony of another witness and arguments tendered by counsel for Mr. Williams. The witness was the man who rode in the backseat alongside the victim and received a nonfatal gunshot wound. The court cited his testimony to supply certain facts about a phone call J.P.-W. received and actions he took directly before the shooting. Second, the court found that it had no duty to compel J.P.-W. to testify, as the State had not offered him full immunity from prosecution. Citing arguments supplied by counsel for Mr. Williams, the court concluded that, were he to testify, J.P.-W. could subject himself to a murder charge as well as federal charges and/or penalties not covered by the State's offer of immunity.

{¶28} The State argues that the trial court conducted a deficient inquiry when it voir dired J.P.-W. Because the court did not perform a question-by-question inquiry, the State argues, J.P.-W. only offered blanket assertions in response to generalized questions. Moreover, because the court did not conduct its inquiry in camera, the State argues that the attorneys for Mr. Williams were able to influence the proceedings by repeatedly suggesting concerns not raised by J.P.-W. The State insists the flawed procedure "undermined the purpose of evaluating the legitimacy of [J.P.-W.'s] invocation . . . ." It argues that J.P.-W. gave contradictory answers when asked his reasons for not testifying and never adequately explained why he feared self-incrimination. According to the State, the court ignored those contradictions and reached its decision based on facts offered by a different witness and answers and arguments supplied by counsel for Mr. Williams.

{¶29} A valid assertion of one's Fifth Amendment privilege is a prerequisite to any grant or denial of immunity. *See State v. Reiner*, 89 Ohio St.3d 342, 356 (2000), *rev'd on other grounds*, 532 U.S. 17 (2001). *See also State ex rel. Leis v. Outcalt*, 1 Ohio St.3d 147, 148 (1982), citing

R.C. 2945.44(A) ("[I]mmunity may not be granted[] unless the witness first refused to answer upon a claim of privilege against self-incrimination."). As previously noted, the trial court reached two separate legal conclusions in this matter. First, the court found that J.P.-W. had a valid reason for invoking his Fifth Amendment rights. Second, it found that it had no duty to compel J.P.-W. to testify, as the State had not offered him full immunity from prosecution. The State's appeal is not limited to the trial court's second conclusion. The State seeks to challenge the trial court's conclusion that J.P.-W. properly invoked his Fifth Amendment rights.

{¶30} Unlike the majority, I would permit this appeal to proceed to a merits review. I would allow the appeal to proceed as a matter of right because the trial court's ruling effectively excluded evidence and "destroy[ed] the ability of the state to prosecute." *State v. Davidson*, 17 Ohio St.3d 132, 135 (1985). Despite its failure to conduct a proper inquiry, *see* Discussion, *infra*, the trial court concluded that Eyewitness Two had a constitutional right not to testify. The court's ruling, therefore, placed the State in the untenable position of losing its sole eyewitness or offering full immunity to an individual who never offered a valid reason for invoking his rights. *See* Discussion, *infra*. I would conclude that the State had the right to appeal from the procedure the trial court employed herein.

{¶31} Further, even assuming the State does not have a right to appeal under R.C. 2945.67(A) and Crim.R. 12(K), I would grant its motion for leave to appeal. *See State v. Bistricky*, 51 Ohio St.3d 157, 159 (1990), citing R.C. 2945.67(A). R.C. 2945.67(A) allows the State to seek leave to appeal any adverse decision apart from the final verdict. "The State's burden in seeking leave to appeal is . . . not an onerous one." *State v. Jones*, 2025-Ohio-5389, ¶ 18. The State need only allege that error(s) occurred in the trial court proceedings and "show 'the probability that the errors claimed' – i.e., the ones it asserted – 'did in fact occur' . . . ." *Id.* at ¶ 21. Discretionary

leave to appeal is not dependent upon the trial court having issued a final, appealable order. *See State v. Jackson*, 2011-Ohio-986, ¶ 7 (9th Dist.).

**{¶32}** To the extent the State seeks to challenge the procedure the trial court employed and the sufficiency of the inquiry it conducted herein, I would conclude that the State's arguments are properly before us because it has demonstrated at least the probability that trial court error occurred. *See Jones* at ¶ 21. *See generally State ex rel. Leis v. Outcalt*, 1 Ohio St.3d 147, 150 (1982) ("We are at a loss to find a basis of appeal for the state in a criminal case from a decision affecting a non-party when the defendant has already been acquitted."). The procedure the court employed and its inquiry, if improper, resulted in the exclusion of evidence critical to the State's case. *See State v. Brasher*, 2022-Ohio-4703, ¶ 23 (standing exists when a party is aggrieved by a court's error and has alleged a personal stake in the outcome of the controversy). Thus, I would grant the State's motion for leave insofar as it concerns those aspects of the court's ruling. I also would conclude that the State is entitled to relief on the merits.

**{¶33}** "The Fifth Amendment to the United States Constitution provides persons with a privilege against compelled self-incrimination, which is applicable against the states through the Due Process Clause of the Fourteenth Amendment." *State v. Antoline*, 2003-Ohio-1130, ¶ 12 (9th Dist.). It applies to protect the accused as well as "witnesses who would incriminate themselves by giving responses to questions posed to them." *State v. Arnold*, 2016-Ohio-1595, ¶ 31. The privilege extends to "answers that would in themselves support a conviction" and "those which would furnish a link in the chain of evidence needed to prosecute the claimant . . . ." *Hoffman v. U.S.*, 341 U.S. 479, 486 (1951).

{¶34} "The trial court's inquiry into the basis of a witness's assertion of the privilege is critical . . . ." *Arnold* at ¶ 47. "The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself . . . ." *Hoffman* at 486.

> [S]hort of uttering statements or supplying evidence that would be incriminating, a witness must supply personal statements under oath or provide evidence with respect to each question propounded to him to indicate the nature of the criminal charge which provides the basis for his fear of prosecution and, if necessary to complement non-testimonial evidence, personal statements under oath to meet the standard for establishing reasonable cause to fear prosecution under this charge. Statements under oath, in person or by affidavit, are necessary because the present penalty of perjury may be the sole assurance against a spurious assertion of the privilege. Argument may be supplied by counsel but not the facts necessary for the court's determination.

*Arnold* at ¶ 44, quoting *In re Morganroth*, 718 F.2d 161, 169-170 (6th Cir. 1983). "[T]he trial court has a clear duty to determine whether a direct answer to [a] question may reasonably have a tendency either to incriminate the witness or to furnish proof of an element or link in the chain of evidence necessary to convict the witness of a crime." *Arnold* at ¶ 45. "[T]he record of the trial court's proceedings should clearly reflect the court's inquiries into the bases of the claim of privilege and the proponent's responses." *Id.* at ¶ 47.

{¶35} I would conclude that the trial court failed to conduct a proper inquiry when it voir dired J.P.-W. Though a witness "is not required to prove the hazard" before he can assert his privilege against self-incrimination, he "is not exonerated from answering merely because he declares that in so doing he would incriminate himself . . . ." *Hoffman*, 341 U.S. at 486. The witness

> "must supply *personal* statements under oath or provide evidence *with respect to each question propounded to him* to indicate the nature of the criminal charge which provides the basis for his fear of prosecution and, if necessary to complement non-testimonial evidence, personal statements under oath to meet the standard for establishing reasonable cause to fear prosecution under this charge."

(Emphasis added.) *Arnold*, 2016-Ohio-1595, at ¶ 44, quoting *In re Morganroth*, 718 F.2d at 169-170. The record reflects that the trial court failed to adhere to the foregoing standard when it questioned J.P.-W.

{¶36} The trial court never attempted a question-by-question inquiry. It only asked J.P.-W. if he intended to testify about anything he saw or heard on the day of the shooting. J.P.-W. was never asked about the days before or after the shooting. He was never asked if he would admit that he was questioned by the police. He was never asked if he would admit that he gave a statement to the police. At one point during the voir dire, the trial court even acknowledged that it did not know what questions the parties intended to ask the witness. J.P.-W. simply informed the court that he would not answer any questions. As further explained below, the court failed to ensure that he provided it with an adequate "basis for asserting the privilege and evidence to support that claim . . . ." *Arnold* at ¶ 46.

{¶37} The first three reasons J.P.-W. offered the trial court for not testifying had no bearing on his right against self-incrimination. The trial court recognized as much when it informed J.P.-W. that his proffered reasons were insufficient and that he would have to testify. Yet, the court then accepted J.P.-W.'s blanket pronouncement that he did not want to testify "for fear of additional charges." J.P.-W. was unable to expand on that assertion. He indicated that he did not know whether he might be subject to any criminal penalties in this case or his federal case. Likewise, his counsel offered limited input in that regard. The only articulable reasons offered as to why J.P.-W. might be subject to criminal penalties came from counsel for Mr. Williams. Indeed, in issuing findings of fact and conclusions of law, the trial court erroneously relied on the arguments of counsel for Mr. Williams and testimony from another witness who had already testified for the State. *See Arnold* at ¶ 44, quoting *In re Morganroth* at 170 ("Argument may be

supplied by counsel but not the facts necessary for the court's determination."). The court was unable to rely on pieces of evidence or personal statements supplied by J.P.-W. because none were offered.

{¶38} Even if the trial court was not required to question J.P.-W. in camera,[1] it had a duty to ensure that he provided "the basis for asserting the privilege *and evidence to support that claim* . . . ." (Emphasis added.). *Id.* at ¶ 46. Instead, the court relied on evidence introduced by other parties and arguments advanced by the defense to reach the conclusion that J.P.-W. "had a legitimate and reasonable reason to invoke [his] Fifth Amendment rights." Because the trial court failed to conduct a proper inquiry and relied on improper evidence to support its conclusion, I would sustain the State's assignment of error and remand the matter for further proceedings. In so holding, I would take no position on the issue of whether the State's immunity agreement complied with R.C. 2945.44 such that J.P.-W. could be compelled to testify. Because a valid assertion of one's Fifth Amendment privilege is a prerequisite to an offer of statutory immunity, I would conclude that the issue of immunity is premature at this time. For the foregoing reasons, I respectfully dissent from the majority's decision.

APPEARANCES:

ELLIOT KOLKOVICH, Prosecuting Attorney, and C. RICHLEY RALEY, JR., Assistant Prosecuting Attorney, for Appellant.

NOAH MUNYER and JEFF LAYBOURNE, Attorneys at Law, for Appellee.

---

[1] Notably, the State did not request an in camera inquiry or object based on the court's failure to conduct one. To the extent the State argues that the court erred by not questioning Eyewitness Two in camera, I would conclude that it forfeited its argument for review. Because it has not argued plain error, I would not construct an argument on its behalf. *See State v. Blankenship*, 2016-Ohio-5458, ¶ 7 (9th Dist.).